SOLEDAD y SEVERIANA LLORÉNS TORRES, demandantes y apelantes, *v.* JUAN ARBONA REYNES y G. LINÁS & CÍA., demandados y apelados.

Núm. 8298.—*Sometido:* Junio 9, 1942.—*Resuelto:* Enero 20, 1943.

*Luis Lloréns Torres,* abogado de las apelantes; *E. T. Fiddler, H. S. McConnell* y *José E. González,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Las hermanas Soledad y Severiana Lloréns Torres radicaron una demanda de interdicto para recobrar la posesión de la "Hacienda Soledad", contra don Juan Arbona Reynes, el 14 de mayo de 1937. Alegaron que el día 13 de junio de 1936 y desde varios años con anterioridad a esa fecha estaban en posesión quieta y pacífica de la finca, en la que tienen constituído su hogar seguro; que el día 13 de junio de 1936 fueron despojadas de esa posesión, despojo que se realizó, primeramente, el 22 de mayo de 1936 y posteriormente el 13 de junio del mismo año, mientras dichas demandantes se hallaban temporalmente en la ciudad de Ponce; que el acto de despojo fué realizado por el Márshal de la Corte de Distrito de Ponce y el Sr. Ramiro Lázaro, quien actuaba en entendido con el demandado Juan Arbona Reynes, sin el consentimiento previo y contra la voluntad de las demandantes; y, por último, que para la fecha de la radicación de la demanda

Juan Arbona Reynes estaba en posesión del inmueble descrito en la demanda.

Contestó el demandado Arbona, negando que para las fechas mencionadas en la demanda las demandantes estuvieran en posesión de la finca o que fueran despojadas de posesión alguna. Alegó en contrario que las demandantes residían en la ciudad de Ponce y no tenían hogar seguro constituído en la "Hacienda Soledad" y, además, que el Márshal de la Corte de Distrito de Ponce, José R. Rodríguez, le entregó la posesión del inmueble objeto del litigio, pero que dicha posesión no le fué entregada contra la voluntad de las demandantes ni a través de despojo, violencia o fuerza alguna.

Alegó como defensas especiales que había adquirido la posesión del inmueble descrito, por compra que hiciera del mismo al National City Bank of New York, el cual había adquirido; a su vez, dicho inmueble y la posesión del mismo por adjudicación en públicas subastas celebradas el 22 de mayo de 1936 en dos casos sobre ejecución de hipoteca, seguidos por dicho banco contra Tiburcio Lloréns Torres y otros; y además, que él entró en posesión del inmueble descrito en la demanda, pacíficamente y sin oposición de persona alguna.

Los hechos probados en la vista ante la corte de distrito son como sigue:

Las demandantes, Soledad y Severiana y sus hermanos Gregoria, Tiburcio y Luis Lloréns Torres, y el padre de ellos don Luis Lloréns Echevarría, eran condueños de la "Hacienda Soledad". En distintas fechas hipotecaron sus condominios por $5,000 y $8,000, y las hipotecas fueron más tarde cedidas al National City Bank of New York. Vencidos los dos créditos, el banco inició dos procedimientos ejecutivos hipotecarios, uno en contra de los hermanos Lloréns Torres y otro contra los mismos y las esposas de Tiburcio y Luis. Vencidos los treinta días siguientes al del requeri-

miento de pago hecho a los demandados, se subastaron los condominios el 4 de marzo y el 22 de mayo de 1936, respectivamente. Adjudicados al banco ejecutante los condominios hipotecados el márshal otorgó en las mismas fechas las escrituras de ventas judiciales correspondientes.

El 23 de mayo de 1936, el Márshal de la Corte de Distrito de Ponce, en compañía del Sr. Ramiro Lázaro, Gerente del National City Bank of New York, fué a la finca y notificó a los medianeros que allí vivían que la finca había sido adjudicada al banco, pero no le dió posesión material de ella al Sr. Lázaro.

El 13 de junio de 1936, el márshal, a requerimiento del banco, volvió a la finca y después de descerrajar la puerta de la casa vivienda de las demandantes, sacó los muebles que allí había y los mandó en un camión a otra finca de don Tiburcio Lloréns. En la tarde de ese mismo día, el márshal le dió posesión de la finca, por orden del Sr. Lázaro del National City Bank, a Juan Arbona Reynes, el demandado, que ya estaba en posesión de parte de ella desde fecha anterior.

En las órdenes dictadas por la corte en los casos Núm. 9382 y Núm. 9383 sobre ejecución de hipoteca, supra, después de ordenarse que se "requiriera de pago a los demandados" del capital e intereses adeudados, se hizo constar lo siguiente:

"...apercibiéndoles de que si no efectuaren dicho pago dentro del término fijado de treinta días, se procederá a la venta en pública subasta de los bienes hipotecados que se describen en el Escrito Inicial, para con su importe hacer el pago de dichas responsabilidades en la forma que determina la ley sobre el modo de satisfacer las sentencias que se dicten en procedimientos especiales para el cobro de hipotecas, y notifíquese de este procedimiento a El Pueblo de Puerto Rico quien tiene gravámenes sobre los bienes que aquí se ejecutan posterior (sic) al crédito hipotecario de la demandante, conforme provee el artículo 171, inciso 5°. del Reglamento para la Ejecución de la Ley Hipotecaria."

Con posterioridad a la vista del caso, las demandantes radicaron una demanda complementaria, designando a G.

Llinás & Cía., S. en C., como parte demandada y alegando entre otras cosas que dicha sociedad había adquirido del codemandado Arbona, durante la pendencia y a sabiendas del litigio una porción de la finca objeto del pleito.

La sociedad codemandada contestó, así también como el codemandado Juan Arbona Reynes, haciendo más o menos las mismas alegaciones que se hicieron en la contestación a la demanda original y alegando además G. Llinás & Cía., S. en C., su condición de tercero por haber comprado de quien tenía título inscrito en el Registro de la Propiedad sin defecto alguno y sin anotación alguna de *lis pendens*.

Las partes acordaron someter la vista de la demanda complementaria y de las contestaciones a la misma por la misma prueba practicada en la vista ya celebrada.

La Corte de Distrito de Ponce, con fecha 3 de noviembre de 1938, dictó sentencia declarando sin lugar la demanda original y la complementaria, con costas. Apelaron las demandantes.

De las varias cuestiones legales suscitadas por los ocho señalamientos de error, dos solamente merecen consideración. Son las siguientes:

1. ¿Estuvieron las demandantes apelantes en la posesión del inmueble durante el año que precedió a la fecha en que se radicó la demanda?

2. ¿Estaba facultado y autorizado el márshal de la corte inferior para penetrar en la finca de las demandantes, expulsar a éstas del inmueble y poner en posesión al demandado?

▮ La primera cuestión fué planteada y resuelta por la corte inferior en la forma siguiente:

"La cuestión principal, el *issue*, a resolver en este caso es si las demandantes estaban o no en posesión de la Hacienda Soledad dentro del año anterior a la radicación de la demanda, y si fueron despojadas ilegalmente de dicha posesión por el codemandado Juan Arbona Reynes. La dificultad que ha encontrado la corte para resolver esta cuestión surge de la propia prueba contradictoria de las demandantes.

Ha demostrado ésta, que si bien las demandantes iban a su finca y allí tenían a un encargado llamado Dávila, es un hecho probado también que desde varios días antes del 13 de junio de 1936, en que fué el márshal a darle posesión al banco, ya estaba el aquí demandado, Juan Arbona Reynes, en posesión de la finca o de parte de ella. *No es de esta posesión anterior de Arbona que se quejan las demandantes, sino de la específica del 13 de junio en adelante.* Si ya Arbona estaba en posesión, ¿cómo pudo despojar a las demandantes en fecha posterior?

"Del récord taquigráfico tomamos los siguientes extractos de la declaración del testigo de las demandantes, Rafael Angel Dávila. Testimonio directo, página 36:

" '¿Quién está actualmente en posesión de esa finca?

" 'Pues actualmente, esa finca, según noticias...

" 'No, no, no, según noticias no. ¿Quién la está poseyendo ahora?

" 'Actualmente es de don Juan Arbona Reynes.

" '¿Él es el que la está poseyendo ahora?

" 'Sí, señor.

" '¿Desde cuándo?

" '*Desde seis o siete días antes del 13 de junio.*

" '¿Dijo usted que don Juan Arbona estaba en posesión de esa finca desde algunos días antes del 13 de junio de 1936?

" 'Sí, señor.

" '¿Él estaba en posesión de la finca?

" 'Sí, señor.

" '¿De manera que cuando fué el márshal allí, el día 13 de junio de 1936, ya don Juan Arbona Reynes estaba en posesión de la finca?

" 'De parte de la finca, porque tengo entendido que tenían que estar de acuerdo los dueños anteriores con que don Juan Arbona se posesionara de esa finca y don Juan Arbona Reynes no fué a posesionarse de la finca, sino que empezó los trabajos por las últimas piezas de arriba; entró sin encomendarse a nadie; entró por Las Papas, una de las piezas de las más altas.

" '¿De manera que para el 13 de junio ya don Juan Arbona estaba en posesión de, por lo menos, parte de la finca Soledad?

" 'Sí.

"De manera que, independientemente de si el márshal tenía una orden legal y válida de la corte para dar posesión al banco el 13 de junio de 1936, la prueba de las demandantes demuestra que el codemandado Juan Arbona Reynes, desde varios días antes, estaba en posesión de la finca o de parte de ella y estaba trabajando en

unas piezas de la misma, sin objeción alguna de las demandantes y sus empleados. Es más, la prueba demuestra que cuando el márshal fué a la finca en la mañana del 13 de junio de 1936, el codemandado Juan Arbona Reynes no estaba presente ni tomó participación alguna en el desalojo de los muebles de la casa, que fué lo único que hizo el márshal, y que no fué hasta ese mismo día, por la tarde, que dicho funcionario, a virtud de orden del banco, y después del desahucio, que le dió posesión al Sr. Arbona. Del récord taquigráfico aparece el márshal, Sr. Rodríguez declarando en su testimonio directo así: *"Páginas 49 y 50.*

" '¿Usted el día 13 de junio de 1936 estuvo en la Hacienda Soledad, en el barrio de Collores, de Juana Díaz?

" 'Sí, señor.

" '¿Con quién estuvo usted?

" 'Con el submárshal Morales.

" '¿Quién más estuvo con ustedes allí?

" 'Aquí, pero allá nadie más.

" '¿Allí no se encontraron ustedes con el señor Arbona?

" 'No. El señor Arbona no estaba allí en la finca. El señor Arbona estaba en su casa.'

"Y en la repregunta a la página 64:

" '¿Él no protestó de que ustedes le dieran posesión al señor don Juan Arbona?

" 'No, señor. Don Juan vino por la tarde; después que nosotros habíamos hecho el desahucio, el lanzamiento, y después fué que le dimos posesión a don Juan, a virtud de orden del National City Bank.'

"Consideramos, por lo tanto, que no se ha probado la alegación esencial de la demanda en este caso, o sea que 'el día 13 de junio de 1936 el aquí demandado Juan Arbona Reynes, aprovechándose de que en ese día ninguna de las demandantes se hallaba en la finca, se personó en ella acompañado de José R. Rodríguez, quien entonces era márshal de esta corte y como tal era reconocido en aquel lugar, y con amenazas de fuerza y violencia, el dicho Arbona, ayudado por el citado márshal, se incautó de la posesión real o tenencia material de la finca en su totalidad, etc.' No hay prueba alguna que demuestre que el codemandado Juan Arbona Reynes, por sí o actuando a nombre del National City Bank tomara participación alguna en los hechos realizados por el márshal, pues éste, en todo momento actuó sin la intervención de Arbona y por órdenes directas del National City Bank, que no es parte demandada en esta acción. Considerando este hecho y el otro de que Arbona ya estaba en posesión por lo menos

de parte de la finca desde antes del 13 de junio de 1936, tenemos que llegar a la conclusión de que las cuestiones legales planteadas por las demandantes en cuanto a si el márshal tenía o no una orden legal en los casos núm. 9382 y núm. 9383, supra, para darle posesión de la finca al National City Bank, no pueden ser resueltos en este caso, precisamente por no ser parte en este caso dicha institución, y al efecto hacemos constar que nada de lo anteriormente expuesto debe interpretarse en el sentido de que resolvamos que el márshal tenía o no autoridad para actuar en la forma en que lo hizo en relación con el banco.

"En cuanto a la codemandada, G. Llinás & Co., S. en C., habiendo ésta adquirido parte de la finca por compra al Sr. Arbona, que era el dueño, según aparece en el registro de la propiedad, tampoco se le ha conectado con los hechos ocurridos el 13 de junio de 1936.

"Por las razones expuestas, la corte es de opinión que procede declarar y declara sin lugar la demanda y la demanda complementaria en este caso, con costas sin que éstas incluyan honorarios de abogado."

Las conclusiones de la corte inferior son a nuestro juicio contrarias a las alegaciones y a la prueba. En el párrafo cuarto de la demanda, las demandantes dicen:

"Alegamos además que el despojo mencionado se realizó del siguiente modo. Primeramente, en un día posterior al 22 de mayo y anterior al 13 de junio de aquel año 1936, en cuya fecha se hallaban temporalmente en Ponce las demandantes, ... se personaron en el inmueble los señores Ramiro Lázaro y el Márshal de esta Corte; y allí, entonces, según información y creencia que han tenido ahora las demandantes, el dicho Lázaro, actuando en entendido con el aquí demandado Juan Arbona, para que éste se incautara de la posesión del inmueble, requirió a los empleados de las demandantes en la finca para que la desocuparan, diciéndoles que ya no era propiedad de dichas demandantes. Y posteriormente, el citado día 13 de junio de 1936, el aquí demandado Juan Arbona Reynes, aprovechándose de que en ese día ninguna de las demandantes se hallaban en la finca, se personó en ella acompañado de José R. Rodríguez quien entonces era Márshal de esta Corte ... ; y con amenazas de fuerza y violencia, el dicho Arbona, ayudado por el citado Márshal, se incautó de la posesión real o tenencia material de la finca en su totalidad...; todo ello sin consentimiento y contra la voluntad de las demandantes y de sus agentes y empleados en la propiedad y con la oposición de éstos;

y ambos, maliciosamente, simulando que llevaban autorización y mandamiento de esta Corte de Distrito y que actuaban bajo su autoridad, obligaron a los empleados de las demandantes a abandonar la finca y a sacar el ganado que pastaba en sus terrenos, y arrojaron a la calle los muebles y ropas del hogar que allí tenían y tienen en concepto de *homestead* dichas demandantes, etc.''

Es evidente que las demandantes se quejaron de dos actos distintos de despojo, ambos realizados por el mismo demandado Arbona, ayudado por el márshal de la corte de distrito. En el primero, el demandado se incautó de parte de la finca. En el segundo, el márshal expulsó de la finca a los representantes de las demandantes, dejando al demandado en posesión de la totalidad del inmueble.

La evidencia ofrecida por las demandantes para sostener las anteriores alegaciones demostró fuera de toda duda que las hermanas demandantes estuvieron en posesión de la finca desde el año 1928 hasta el 13 de junio de 1936 en que fueron echadas de ella por el márshal de la corte; que mientras las demandantes se encontraban en Ponce, la finca y la casa quedaban bajo el cuidado de un joven mayordomo llamado Rafael Angel Dávila; que la casa que había en la finca era el único hogar de las demandantes; que éstas, al irse a Ponce, no lo hicieron con la intención de abandonar la finca; y que el encargado de la finca se opuso a y protestó contra los actos realizados allí por el márshal y el demandado.

José Ramón Rodríguez, Márshal de la Corte de Distrito de Ponce declaró que el día 13 de junio de 1936 fué requerido por el Sr. Lázaro del National City Bank para que fuera a poner en posesión de la finca al Sr. Arbona; que cuando iba para la finca encontró al encargado de la misma y le dijo a lo que iban; que cuando estaban sacando los muebles, llegó el encargado Dávila, representante de las Lloréns, y protestó y se alteró hasta el punto de que él, el márshal, mandó a buscar al Cabo de la Policía; que todo lo hecho por él allí lo hizo ''por virtud de la orden de subasta, de la orden decretando la venta en pública subasta de los bienes''; que él

entendió de buena fe que el mandamiento para la subasta incluía el dar posesión de la finca.

Establecido el hecho de que las demandantes estaban en posesión de la finca en la fecha en que fueron despojadas de dicha posesión por el márshal, pasemos ahora a resolver si dicho funcionario estaba legalmente autorizado para proceder en la forma en que lo hizo.

El artículo 2 de la "Ley Relativa a las Sentencias y la Manera de Satisfacerlas", Código de Enjuiciamiento Civil, ed. 1933, página 122, dispone:

"Artículo 2.—Siempre que en pleito sobre ejecución de hipoteca, se expida por cualquier tribunal, que tenga jurisdicción en el asunto, una orden para ejecutar dicha hipoteca sobre una propiedad inmueble, dicha orden tendrá toda la fuerza y efecto de un auto ordenando la posesión, tanto entre las partes interesadas en dicho juicio, como entre éstas y cualesquiera otras personas que reclamasen en dicho juicio en virtud de cualquier derecho adquirido durante el mismo, *y el tribunal así lo dispondrá en el fallo, expidiendo una orden para que el márshal o cualquier otro funcionario que ejecutase la orden de venta, proceda en virtud de dicha orden a poner al comprador en posesión de la propiedad vendida dentro del plazo de 30 días contados desde el de la venta.*" (Bastardillas nuestras.)

Es indudable que el demandado Arbona, como comprador de los condominios adjudicados al National City Bank por virtud de la subasta, tenía igual derecho que el banco a que se le pusiera en posesión de la propiedad subastada. Ni el banco ejecutante ni su cesionario, el aquí demandado, tenían derecho por el solo hecho de la subasta y adjudicación a penetrar en la finca de las demandantes y a despojar a éstas de la posesión en que se encontraban como dueñas del inmueble. Esa posesión sólo podían adquirirla el ejecutante o su cesionario por virtud de una orden expedida por la corte que decretó la subasta, de acuerdo con lo dispuesto en el citado artículo de la Ley Relativa a las Sentencias y la Manera de Satisfacerlas.

¿Podía el márshal de la corte de distrito, por el solo hecho de ser márshal y sin autorización expresa de la corte de

distrito, lanzar de la finca a las demandantes y poner en posesión al demandado? El texto claro del citado precepto legal nos obliga a contestar esta pregunta en la negativa. Para que el márshal pueda poner en posesión al comprador de una propiedad vendida por él en pública subasta para satisfacer el importe de una hipoteca, es preciso que la misma corte que ordenó la venta de la propiedad disponga en su fallo que la orden de venta "tendrá toda la fuerza y efecto de un auto ordenando la posesión", y, además, que dicha corte expida una orden para que el márshal u otro funcionario que ejecutase la orden de venta proceda en virtud de la misma a poner al comprador en posesión de la propiedad vendida dentro de los treinta días siguientes al de la subasta.

Ya hemos visto (*supra*) que en las órdenes dictadas en los procedimientos ejecutivos seguidos contra las demandantes solamente se dispuso que se procediera a requerir de pago a las deudoras hipotecarias, apercibiéndolas de que si no efectuaren dicho pago dentro del término de treinta días, se procedería a la venta de los bienes hipotecados.

Alegan los demandados apelados que la ley no requiere que en la sentencia final u orden de ejecución dictada en un ejecutivo hipotecario se incluya una orden para que el márshal proceda a poner al comprador en posesión de la propiedad vendida, dentro del plazo de treinta días contados desde el de la venta. Basan su argumentación en el conflicto que según ellos existe entre el texto español y el inglés del artículo 2 de la Ley Sobre Sentencias y la Manera de Satisfacerlas. Alegan, además, que la subasta de marzo 4 de 1936 no dió al ejecutante el derecho de posesión, porque a virtud de ella se adquirió algo menos de la mitad de los condominios de la finca; y que el banco adquirió el derecho a tomar posesión de la totalidad del inmueble por virtud de la subasta de mayo 22 de 1936, cuando adquirió otros condominios que le dieron la mayoría absoluta y por tanto el derecho a administrar.

El alegado conflicto es más aparente que real. El texto inglés del citado artículo 2, después de proveer que la orden para la ejecución de una hipoteca tendrá toda la fuerza y efecto de un auto ordenando la posesión—*"shall have all the force and effect of a writ of possession"*—requiere imperativamente que el tribunal así lo dispondrá en el fallo—*"and the court shall so direct in the judgment providing for the issuance of such order"*. De la misma argumentación de los apelados se desprende claramente la necesidad de que en el fallo de la corte se incluya una orden autorizando expresamente al márshal para que ponga al comprador en posesión del inmueble vendido en la subasta. En ninguno de los dos fallos dictados en los procedimientos 9382 y 9383 seguidos contra las apelantes se incluyó la orden de posesión. Seguramente la corte inferior estuvo justificada al no incluir dicha orden en la primera subasta, celebrada el 4 de marzo de 1936, ya que por virtud de ella el banco adquiría menos de la mitad de la finca. ¿Qué razón tuvo la corte para no incluirla en el fallo por virtud del cual se celebraron las dos subastas de mayo 22 de 1936? ¿Cómo es posible aceptar que se delegue al márshal la facultad de determinar cuándo debe y cuándo no debe poner al comprador en la posesión del inmueble? El márshal, como funcionario ministerial o ejecutivo, debe limitarse a cumplir estrictamente lo que se le ordene por la corte, sin detenerse a considerar las razones acertadas o erróneas en que la orden se funde. *Sucesores de Villamil & Cía.* v. *Solá,* 22 D.P.R. 531; *Sánchez et al.* v. *Cuevas Zequeira,* 23 D.P.R. 50. En el caso de autos el márshal, al dar posesión de la finca al demandado Arbona y al echar de la misma a las demandantes, actuó sin autorización legal y su acto constituyó un despojo ilegal de la posesión que tenían las demandantes. La corte inferior erró al no dictar el interdicto solicitado.

Para mayor claridad haremos constar que el márshal no está autorizado, por la sola razón de su cargo, para poner en posesión del inmueble al comprador en la subasta. Es

necesario que la corte le ordene expresamente que así lo haga. Esa orden puede ser incluída en la de ejecución de la hipoteca sobre el inmueble, de acuerdo con el artículo 2, supra, o dictada separamente, antes o después de la subasta, a moción de parte interesada. En el caso de autos no se hizo ni en una ni en otra forma.

Del récord ante nos aparece que ante la Corte de Distrito de los Estados Unidos para Puerto Rico se tramitó el caso de Equidad Núm. 2329, iniciado por las aquí demandantes y otros contra los aquí demandados ante la Corte de Distrito de Ponce y trasladado por los demandados al tribunal federal; y que dicho caso terminó por sentencias de enero 4 de 1941 y mayo 15 de 1942, por las cuales se desestimó la demanda.

No tenemos dato alguno que pueda ilustrarnos en cuanto a los derechos que hayan podido adquirir los aquí demandados por virtud de los procedimientos seguidos ante la Corte de Distrito de los Estados Unidos para Puerto Rico en el citado caso de Equidad Núm. 2329. Por consiguiente, la sentencia que hemos de dictar en el presente caso estará subordinada a y no afectará en manera alguna el derecho de posesión que los aquí demandados hayan adquirido por virtud de orden o decreto del tribunal federal.

*La sentencia recurrida debe ser revocada y el caso devuelto a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Todd, Jr. no intervino.