MARÍA RÍOS MÉNDEZ, demandante y recurrente, *v.* BANCO POPULAR DE PUERTO RICO, demandado y recurrido.

Número 11461.
*Reasignado:* 9 de agosto de 1957. *Resuelto:* 27 de mayo de 1959.

*Antonio J. Amadeo,* abogado de la recurrente; *Damián Monserrat, Jr., Gabriel de la Haba* y *Rafael Baragaño, Jr.,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

Reducida a términos breves y precisos, la cuestión fundamental que se plantea en este recurso es la siguiente: ¿cuándo comienza a correr el término para la prescripción de la acción subsidiaria de daños y perjuicios proveniente de la nulidad de un ejecutivo hipotecario? Teniendo en cuenta la naturaleza de dicha acción y lo dispuesto en los arts 1864 y 1869 del Código Civil (ed. 1930), 31 L.P.R.A. secs. 5294 y 5299, nos parece indudable que el plazo para la prescripción se cuenta desde el momento en que, verificada la subasta con el consiguiente remate y consignación del precio, el alguacil en representación del deudor adjudica los bienes hipotecados a favor del rematante. Hay que considerar dicha adjudicación como una especie de compraventa, pues produce una trasmisión por precio, en la cual por ministerio de ley el consentimiento del dueño se sustituye por el acto de un funcionario público. Los bienes quedan *"subastados"* y *"vendidos"* en ese

instante y, si el adjudicatario lo solicitase, también se le pondría inmediatamente en posesión de los mismos. 32 L.P.R.A. sec. 1142. Cf. *Lloréns* v. *Arbona*, 61 D.P.R. 279 (1943). Es decir, la venta se verifica por el solo hecho de la adjudicación, aunque posteriormente deba formalizarse en una escritura pública que sirve de título de dominio a los fines de la inscripción en el registro. De ahí que si el ejecutivo es nulo, con la adjudicación se consuma el acto de despojo de la propiedad, se lesiona el derecho del deudor que puede ser inmediatamente reivindicable y nace la acción correspondiente para conseguirlo, bien sea por medio de la reivindicación con devolución de los frutos, mientras los bienes no hayan pasado a manos de un tercero hipotecario, o por medio de la acción de daños y perjuicios equivalente o subsidiaria cuando resulte imposible obtener la devolución específica de los bienes con sus frutos. Y como no existe disposición especial que otra cosa determine, el tiempo para la prescripción de la acción del deudor perjudicado debe contarse desde ese día en que sin duda tiene expedito su derecho para ejercitarla. Art. 1869 del Código Civil (ed. 1930), 31 L.P.R.A. sec. 5299.

En el caso de autos la alegada nulidad del ejecutivo sumario seguido por el Banco Popular de Puerto Rico se fundó en el hecho de que el acreedor cobró intereses de mora que no estaban garantizados hipotecariamente. Aunque el demandado en su contestación original se opuso a la nulidad, luego admitió que el procedimiento sumarísimo era nulo y que la propiedad había pasado a manos de un tercero hipotecario, descansando exclusivamente en su defensa de que la acción de daños y perjuicios ejercitada había prescrito. La prueba practicada en la vista correspondiente ante el tribunal de instancia demostró que el escrito inicial del procedimiento de ejecución se presentó el 15 de marzo de 1934; que el requerimiento de pago al deudor fue cumplimentado por el alguacil el 20 de marzo de 1934; que los bienes hipotecados fueron subastados y adjudicados al acreedor Banco Popular de Puerto Rico con fecha 26 de junio de 1934; que la escritura de adju-

dicación en venta judicial fue otorgada por el alguacil ante el notario don Damián Monserrat y Suro a favor del Banco Popular el 30 de junio de 1934; y que el inmueble fue posteriormente vendido por dicho Banco a Doña Trinidad Soler mediante escritura pública otorgada el 16 de noviembre de 1934. Como cuestión de derecho el Tribunal Superior resolvió: *primero*, que el ejecutivo hipotecario seguido por el Banco era nulo según la propia admisión del demandado; *segundo*, que por haber pasado la propiedad a manos de un tercero hipotecario, según la propia admisión del demandado, la acción ejercitada por el deudor basándose en la nulidad del procedimiento sumario no era la de reivindicación del inmueble con devolución de sus frutos, sino la equivalente o subsidiaria de daños y perjuicios contra el acreedor ejecutante; *tercero*, que dicha acción subsidiaria de daños y perjuicios, iniciada por el demandante el 20 de junio de 1949, es una *ex contractu* que prescribe a los 15 años; y *cuarto*, que el término para la prescripción de esa acción empieza a correr desde la fecha en que el requerimiento de pago es cumplimentado por el alguacil. Fundándose en las anteriores conclusiones, el tribunal *a quo* decretó que la acción para recobrar los daños provenientes de la nulidad del ejecutivo hipotecario había prescrito y dictó sentencia declarando sin lugar la demanda. Ante nos la parte demandante sostiene que el Tribunal Superior erró al resolver que su acción se hallaba prescrita. A nuestro juicio tiene razón: la acción se inició antes de transcurrir 15 años a partir de la subasta y adjudicación de los bienes hipotecados, o sea, desde el 26 de junio de 1934, y el plazo para la prescripción debe contarse desde esa fecha y no desde el momento en que el requerimiento de pago fue cumplimentado por el alguacil.

 Es preciso aclarar, en primer lugar, la naturaleza de la acción aquí ejercitada basándose en la nulidad del procedimiento sumario. Conforme se ha indicado, no es la de reivindicación del inmueble, sino la equivalente o subsidiaria de daños y perjuicios contra el acreedor ejecutante. Dicha

acción se funda en el art. 38 de la Ley Hipotecaria (30 L.P.R.A. sec. 63) y en el art. 169 del Reglamento para la ejecución de la misma (30 L.P.R.A. sec. 1090). El primero de esos artículos consigna en lo pertinente que " . . . En todo caso en que la acción resolutoria o rescisoria no se pueda dirigir contra el tercero, conforme a lo dispuesto en esta sección, *se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado*". (Bastardillas nuestras.) El segundo, o sea, el 169 del Reglamento, dispone en lo esencial: ". . . El escrito [inicial] a que se refiere esta sección, autorizado siempre con firma del letrado, enumerará los hechos y las razones jurídicas determinantes de la certeza, la subsistencia y la exigibilidad del crédito y de la competencia del juzgado; señalará categóricamente las cantidades cobradas en concepto de intereses o a cuenta del capital de la deuda, expresando también la garantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor, *sujetándose a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el juez para autorizar el procedimiento y para continuarlo*." (Bastardillas nuestras.) Conviene señalar que en el juicio ejecutivo español (arts. 1429 y siguientes de la Ley de Enjuiciamiento Civil) se exige "la protesta de abonar pagos legítimos" (art. 1439). Según indica De La Plaza, Derecho Procesal Civil Español, Vol. II, primera parte (3a ed. 1955) 412–413, realmente este requisito ritual es una mera supervivencia histórica. Cf. 5 Manresa, Comentarios a la Ley de Enjuiciamiento Civil (3a ed. 1910) 467. Por tanto, la disposición del art. 169 del Reglamento Hipotecario sobre la responsabilidad ". . . que por el solo acto de iniciar el procedimiento contraerá el acreedor . . .", sólo tenía el alcance de relevar a éste de hacer la protesta que exigía la ley procesal española en la demanda del juicio ejecutivo ordinario. Véase González Alegre, Los Procedimientos Judiciales de la Ley

Hipotecaria (2a ed. 1955) 93. En nuestro derecho, esa disposición ya no juega ningún papel, pues ha desaparecido el requisito de la protesta de abonar pagos legítimos y también la acción ejecutiva del enjuiciamiento civil español.

Dada la situación privilegiada del acreedor ejecutante en la acción hipotecaria, los preceptos contenidos en los arts. 38 y 169 antes citados consisten en una imposición absoluta del deber de veracidad con respecto a los hechos y circunstancias que ha de apreciar el juez para autorizar el procedimiento sumario. De conformidad con el art. 175 del Reglamento Hipotecario (30 L.P.R.A. sec. 1096), el procedimiento ejecutivo sólo puede suspenderse en tres casos: (1) existencia de un procedimiento criminal por falsedad del título hipotecario en que se haya admitido querella o dictado auto de procesamiento; (2) interposición de una tercería de dominio fundada en título de propiedad inscrito con fecha anterior a la inscripción de la hipoteca y no cancelado en el Registro; (3) prueba de la cancelación de la hipoteca mediante certificación del Registro o copia auténtica de la escritura de cancelación con la debida nota de presentación. Según el precepto concreto del art. 175 antes citado, ". . . todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo . . ." Es decir, el procedimiento ejecutivo continuará de ordinario su curso aunque el deudor pueda demostrar la inexactitud o falsedad de los hechos alegados en el escrito inicial. Por eso la ley exige que el acreedor ejecutante diga la verdad al exponer los hechos en el escrito inicial.

■■ La "malicia o negligencia" que menciona el citado art. 169 del Reglamento Hipotecario se refiere tanto a la ocultación o falseamiento de la realidad a sabiendas, como a una falta de veracidad por error de derecho o por descuido en

la investigación de los hechos que figuren en el escrito inicial. Por mandato legal, se hace responsable al acreedor y se le obliga a indemnizar los daños y perjuicios que por *ilegalidades* en el ejercicio de su acción se ocasionen al deudor ejecutado. Así lo hemos declarado reiteradamente, al resolver: (1) que es preciso ajustarse de modo riguroso a los trámites y requisitos del procedimiento sumarísimo, incurriéndose en nulidad de lo actuado al apartarse de los mismos; y (2) que el cobro de intereses excesivos o de otras cantidades que no estén hipotecariamente garantizadas, constituye un error sustancial en perjuicio de los derechos del deudor que vicia de nulidad el procedimiento ejecutivo seguido, aunque tal ilegalidad se deba a un mero error de derecho o a un mero descuido en la investigación de los hechos que figuren en el escrito inicial. Véanse, entre otros, *Piovanetti* v. *Vivaldi*, 80 D.P.R. 108 (1957); *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412 (1949); *Buil* v. *Banco Popular*, 69 D.P.R. 254 (1948); *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 D.P.R. 525 (1946); *Costas* v. *G. Llinás & Co.*, 66 D.P.R. 730 (1946); *De Jesús* v. *Assad*, 63 D.P.R. 137 (1944); *Figueroa* v. *Boneta*, 58 D.P.R. 811 (1941); *Vázquez Vda. de McCormick* v. *Gutiérrez*, 52 D.P.R. 170 (1937); *Gutiérrez Vda. de Crosas* v. *Longpré*, 44 D.P.R. 667 (1933); *Martorell* v. *Crédito y Ahorro Ponceño*, 42 D.P.R. 655 (1931); *Santos* v. *Crédito y Ahorro Ponceño*, 41 D.P.R. 946 (1931).[1] Pero esa condena no procede —hay que subrayarlo— a menos que se pruebe la existencia del daño irrogado por el incumplimiento de la obligación que asume el ejecutante. Véanse la Sentencia del Tribunal Supremo de España de 4 de junio de 1952, 39 Jur. Civ. (2a s.)

[1] En *Sucn. Ramírez de Arellano* v. *Tribunal Superior*, ante pág. 357, señalamos que : "No corresponde al juez investigar o determinar la exactitud o falsedad de los hechos alegados en el escrito inicial para autorizar el procedimiento sumario. Tal responsabilidad recae de lleno sobre el acreedor ejecutante. Y tampoco es necesario para que el procedimiento sea nulo que la conducta del ejecutante pueda equipararse al dolo. Basta un error que constituya negligencia porque la aseveración sea contraria a los hechos o a las reglas jurídicas."

76; 4 Roca Sastre, Derecho Hipotecario (5a ed., 1954) 835; y González Alegre, Los Procedimientos Judiciales de la Ley Hipotecaria (2a ed., 1955) 93.

Porque esto es un hecho: en última instancia la acción del propietario ejecutado para resarcirse del daño que le cause la nulidad del procedimiento sumario, está basada en el incumplimiento de una obligación contractual del acreedor hipotecario. En efecto, el contrato de hipoteca impone al acreedor la obligación de ejercitar su derecho de ejecución sobre los bienes gravados sin incurrir en ilegalidades. Si incurre en éstas, entonces incumple la obligación contraída. Así lo señalamos en *Giménez et al.* v. *Brenes*, 10 D.P.R. 128, 132 (1906) al decir que: ". . . El procedimiento sumario para el cobro de hipoteca es el resultado de un contrato entre partes en el que se han convenido las prestaciones y se ha pactado también el medio de hacer efectivo el crédito en casos de incumplimiento, o sea, en el de falta de pago por parte del deudor." Esta idea tiene una raíz histórica muy honda. Como indica Prieto Castro, el procedimiento ejecutivo sumario es en verdad "*. . . una derivación ideológica y real del pacto de sumisión a la ejecución en el derecho español primitivo.*" Véase 177 Rev. Gral. de Legis. y Jurisp. 493 (1947). El deudor hipotecante acepta que, en caso de incumplimiento, el acreedor tiene derecho a ejecutar directamente los bienes hipotecados por vía de apremio, es decir, sin acción personal o contención relativa al crédito, fuera del trámite previo para la comprobación de la certeza, exigibilidad y subsistencia del mismo. Esta comprobación se realiza sin juicio alguno o fase procesal de contención entre las partes. Depende de los hechos y circunstancias que el acreedor ejecutante haga constar en su escrito inicial para que el juez mande a substanciar el procedimiento sumario. 4 Roca Sastre, Derecho Hipotecario (5a ed. 1954) 820–887. El acreedor por su parte viene obligado por el contrato y por la ley a cumplir con los trámites del procedimiento ejecutivo para cobrar la hipoteca. Se comprende fácilmente, pues, que ". . . la malicia o negligencia a que se

contrae el artículo 169 [del Reglamento Hipotecario] tiene su origen en una obligación contractual o por lo menos en su antecedente contractual, pues a no mediar relaciones contractuales entre los litigantes de este caso, jamás hubiera surgido la obligación de la demandada a indemnizar a la demandante como consecuencia de no haberse interpuesto la acción del procedimiento sumario para el cobro de la hipoteca de conformidad con las disposiciones de la Ley Hipotecaria." *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 D.P.R. 525, 537–538 (1946).

Nótese que en esta acción de daños y perjuicios la parte demandante tiene derecho a recobrar el valor que tenía la propiedad en el mercado cuando fue privado de ella en la subasta. También tiene derecho a recobrar el equivalente de los frutos civiles y rentas producidos por el inmueble mientras éste estuvo en manos del ejecutante, si éste fue el adjudicatario en la subasta, e intereses sobre su valor si el ejecutante no se adjudicó el inmueble en la subasta o si posteriormente lo vendió a un tercero, desde la fecha de la subasta o de la venta al tercero hasta la fecha en que quede firme la sentencia que dicte el Tribunal Superior o este Tribunal Supremo en caso de apelación. Por otro lado, para determinar la cuantía de esos daños, hay que descontar (1) las contribuciones pagadas por la parte demandada, (2) el capital del préstamo hipotecario, y (3) los intereses desde el vencimiento del crédito hipotecario hasta la fecha en que adquiera firmeza la sentencia que dicte el Tribunal Superior o este Tribunal Supremo en caso de que se interponga una apelación. Véanse *Arvelo* v. *Banco Territorial y Agrícola de Puerto Rico*, 29 D.P.R. 1066 (1921) ; *Isaach* v. *Del Toro*, 33 D.P.R. 1000 (1925) ; *Pontón* v. *Sucrs. de Huertas González*, 42 D.P.R. 529 (1931) ; *Santana* v. *Orcasitas*, 47 D.P.R. 735 (1934) ; *F. Rodríguez Hnos. & Co.* v. *Aboy*, supra; y *Nogueras* v. *Muñoz*, 67 D.P.R. 441 (1947). Es decir, la indemnización que el ejecutante viene obligado a pagar al deudor en esta acción de daños y perjuicios, se determina de conformidad con los arts. 1255 y 1259 del Código Civil (ed. 1930), que rigen las

obligaciones de los contratantes cuando se declara la nulidad de una obligación. (1a)

■■ De aquí resulta que la acción contra el acreedor ejecutante para el resarcimiento de los daños causados por la nulidad del ejecutivo hipotecario constituye una acción personal *ex contractu* y no una *ex delicto*. Y no teniendo señalado término especial alguno, dicha acción prescribe a los quince años desde el momento en que sea ejercitable, según lo dispuesto en los arts. 1864 y 1869 del Código Civil (ed. 1930), 31 L.P.R.A. secs. 5294 y 5299. (2) La jurisprudencia constante de este Tribunal así lo tiene declarado. Véanse, entre otros, *Buil* v. *Banco Popular*, 69 D.P.R. 254, 266 (1948); *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 D.P.R. 525, 536–540 (1946); *Gutiérrez Vda. de Crosas* v. *Longpré*, 44 D.P.R. 667 (1933); y *Arvelo* v. *Banco Territorial y Agrícola de Puerto Rico*, 25 D.P.R. 728 (1917). Siendo esto así, el momento preciso en que se inicia la prescripción es *el día en que pudo ejercitarse la acción contra el acreedor ejecutante* por la lesión que le causó al derecho del deudor la nulidad del ejecutivo hipotecario. Y como es sabido, no debe tenerse en cuenta ninguna razón o circunstancia que no afecte a la *posibilidad legal* del ejercicio de dicha acción. Cabe pues preguntar ¿en qué momento nació esa acción? La única respuesta es sin duda: cuando el derecho del deudor pudo

---

(1a) Rezan así:

"Declarada la nulidad de una obligación, los contratantes deben restituirse recíprocamente las cosas que hubiesen sido materia del contrato, con sus frutos, y el precio con los intereses, salvo lo que se dispone en las secciones siguientes." (Art. 1255.)

"Siempre que el obligado por la declaración de nulidad a la devolución de la cosa, no pueda devolverla por haberse perdido, deberá restituir los frutos percibidos y el valor que tenía la cosa cuando se perdió, con los intereses desde la misma fecha." (Art. 1259.)

(2) Copiados a la letra, dicen así:

"La acción hipotecaria prescribe a los veinte años, y las personales que no tengan señalado término especial de prescripción, a los quince." (Art. 1864.)

"El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse." (Art. 1869.)

ser realizado porque fué lesionado o violado por el acreedor. De ahí que el término de prescripción corre desde el instante en que se despoja ilegalmente al deudor de su propiedad, o sea, desde la fecha de la subasta y adjudicación de los bienes hipotecados. Ese es el acto que lesiona los derechos del deudor y que hace legalmente posible el ejercicio de la acción para reivindicarlos. En efecto, la obligación del acreedor consiste en no despojar al deudor hipotecante de su propiedad sin cumplir estrictamente con las disposiciones que para el procedimiento sumario fija la ley. Se trata de una obligación de no hacer un acto, es decir, dirigida a una omisión, por lo cual es imprescindible la consumación del acto contrario para que nazca la acción del deudor. Mientras no quede consumado dicho acto de despojo de la propiedad contrario a la obligación asumida por el acreedor hipotecario, el deudor no puede legalmente ejercitar ninguna acción de daños y perjuicios. A ese momento hay que atenerse para fijar la iniciación de la prescripción. Cf. la Sentencia del Tribunal Supremo de España de 8 de mayo de 1903, 95 Jur. Civ. 736; Castán, Derecho Civil Español, Común y Foral, Tomo I, Vol. II (9a ed., 1955) 716–718; 12 Manresa, Comentarios al Código Civil Español (5a ed., 1951) 944–946; 1 Borrell y Soler, Derecho Civil Español (1955) 507–515.

 Es cierto que, según doctrina reiterada de este Tribunal, al admitir el procedimiento sumario el juez dicta en realidad una sentencia firme fundada en el contrato entre las partes. Por eso el requerimiento de pago al deudor constituye la notificación de dicha sentencia. Véanse *Vázquez Vda. de McCormick* v. *Gutiérrez*, 52 D.P.R. 170 (1937); *Arsuaga* v. *Corte*, 43 D.P.R. 1001 (1932) y *Perales* v. *Corte*, 43 D.P.R. 902 (1932). Sin embargo, el deudor hipotecante tiene un término de treinta días para pagar después del requerimiento. Además si no se verifica el pago, la ley dispone que se publicarán edictos anunciándose la subasta por un término de veinte días. Una vez celebrada la subasta, se procede a la adjudicación de la propiedad al mejor postor,

a poner en posesión judicial de los bienes al adjudicatario y a la formalización de dicha venta mediante el otorgamiento de la correspondiente escritura. Por tanto, el procedimiento sumario no termina cuando el requerimiento de pago es cumplimentado por el alguacil. Véanse *Salas* v. *Cabassa*, 69 D.P.R. 457, 467 (1948); *Federal Land Bank* v. *Corte Mpal. y Santi, Int.*, 47 D.P.R. 421 (1934); *Gratacós* v. *Corte*, 46 D.P.R. 175 (1934); y *Arroyo* v. *Zavala*, 40 D.P.R. 269 (1929).[3] Por otro lado, hemos resuelto que "...la corte no agota su facultad al autorizar el requerimiento de pago, ni pierde todo dominio sobre tal procedimiento [ejecutivo], sino que, al descubrir cualquier defecto jurisdiccional que es aparente de la faz de la petición o de los documentos unidos a la misma, puede dejar sin efecto su resolución original, bien a iniciativa propia o a instancia de una de las partes en el procedimiento". *Miranda* v. *Corte*, 41 D.P.R. 619, 623 (1930) y *Domenech* v. *Suau, Fiol & Co.*, 49 D.P.R. 755, 757 (1936). Así pues, el incumplimiento *sensu stricto* de la obligación contractual del acreedor no queda consumado ni por la presentación de un escrito inicial que contenga aseveraciones falsas o erróneas, ni por la autorización del procedimiento sumario en virtud de auto judicial, ni por la notificación del requerimiento de pago al deudor. Mientras no se verifica el acto de subasta y adjudicación sólo existe una posibilidad futura de incumplimiento. Este sólo queda realizado cuando el alguacil vende mediante adjudicación los bienes al adquirente o rematante en la subasta. En ese momento también surgen los daños que, como señalamos anteriormente, constituyen un requisito indispensable para el ejercicio de la acción de indemnización basada en el art. 169

---

[3] Una vez ordenada la venta de los bienes en pública subasta, el procedimiento sumario para el cobro de créditos hipotecarios debe ajustarse en todos sus trámites ulteriores a lo dispuesto en la Ley de 9 de marzo de 1905 (32 L.P.R.A. secs. 1141–1147). Sin embargo, la Ley núm. 69 de 1931 (Leyes, pág. 433) restableció con ciertas enmiendas el art. 127 de la Ley Hipotecaria. *Font* v. *Registrador*, 52 D.P.R. 850 (1938). Véase 2 Muñoz Morales, Lecciones de Derecho Hipotecario, 214–236 y los casos allí citados.

del Reglamento Hipotecario. Sentencia del Tribunal Supremo de España de 4 de junio de 1952, 39 Jur. Civ. (2a s.) 76. Sin duda, el procedimiento hipotecario puede impugnarse, aunque el mismo no haya terminado todavía (aun antes del requerimiento de pago), mediante la presentación de una acción personal ordinaria. Art. 175 del Reglamento Hipotecario, 30 L.P.R.A. sec. 1096; *Mestre* v. *Michelena*, 30 D.P.R. 148 (1922); Roca Sastre, *op. cit.* supra, 882–883. Pero es obvio que en este "juicio plenario" el deudor no podría formular contra su acreedor una reclamación por daños y perjuicios que sólo sufrirá al venderse los bienes en pública subasta. Así por ejemplo: en *Arvelo* v. *Banco Territorial Agrícola de Puerto Rico*, 25 D.P.R. 728 (1917) la propiedad objeto del ejecutivo sumario fue adjudicada al banco demandado el 26 de septiembre de 1898 y la demanda de daños y perjuicios no fue iniciada hasta el 7 de septiembre de 1913. Resolvimos que la acción no se hallaba prescrita, a pesar de que el requerimiento de pago fue hecho en 23 de febrero de 1898. De haberse tomado esa fecha como punto de partida para la prescripción—tal cual sostiene aquí el banco recurrido—este Tribunal hubiera tenido necesariamente que llegar a una conclusión distinta.

Nótese además que el traspaso posterior de los bienes por el adjudicatario a un tercero hipotecario y la inscripción por éste de los mismos en el Registro, no puede lógicamente alterar el plazo de la prescripción de la acción de daños y perjuicios provenientes de la nulidad del ejecutivo. Sin embargo, en *Carmona* v. *Cuesta*, 20 D.P.R. 229 (1914) declaramos que el término de la prescripción de dicha acción se cuenta desde la fecha en que se inscriben los bienes ejecutados en el Registro a nombre de un tercero. Esa doctrina es errónea y debe ser revocada. El hecho de que la acción personal para la indemnización de los daños y perjuicios sufridos por el deudor ejecutado tenga carácter de "subsidiaria", sólo significa que debe acudirse en primer lugar a la acción principal de reivindicación o de *mera declaración de la*

*propiedad*, si el procedimiento ejecutivo está viciado de nulidad y los bienes no han pasado a manos de un tercero hipotecario.(⁴) Salvo en casos excepcionales, la consecuencia normal en nuestro derecho del incumplimiento de las diversas clases de obligaciones, tanto cuando se trata de una de dar o hacer como de una de no hacer, es la ejecución *in natura* o cumplimiento específico de la prestación. Véanse 3 Castán, Derecho Civil Español, Común y Foral (8a ed. 1954) 160 y sigtes.; 2 Colin y Capitant, *Cours Elementaire de Droit Civil Francais* (10 ed. 1948) 111 y sigtes.; Szladits, *The Concept of Specific Performance in Civil Law*, 4 Am. J. of Comp. Law 208 (1955). De ahí que deba exigirse en forma específica el cumplimiento de la obligación contractual del acreedor ejecutante, al decretarse la nulidad del procedimiento, mediante la devolución de la finca y de los frutos. Sólo cuando es imposible procurar la ejecución de dicha obligación en naturaleza hay lugar a la sustitución de ésta por la indemnización de daños y perjuicios, que es un cumplimiento equivalente y subsidiario. Pero no podría sostenerse que la acción personal contra el acreedor ejecutante para el resarcimiento de los daños y perjuicios nace o se origina

---

(⁴) No hay duda que esta acción denominada "principal" nace inmediatamente después de verificarse la subasta. En la acción *real* reivindicatoria que se ejerce *erga omnes*, cualquiera que sea el detentador, es imprescindible que el demandado tenga la posesión de la cosa que se reclama. *Rosso* v. *Rosso*, 23 D.P.R. 131, 134-135 (1915) y *Sucn. Gorbea* v. *Pérez*, 10 D.P.R. 460, 463 (1906). Pero no es indispensable que el demandado tenga la posesión natural de la cosa, bastando sólo la posesión legal. De Buen, Derecho Civil Común y Foral (1931) 238 y sigtes. Por otro lado, la acción de mera declaración o constatación de la propiedad ". . . no exige que el demandado sea poseedor . . .". Véase la sentencia del Tribunal Supremo de España de 21 de febrero de 1941, comentada en 25 Rev. de Derecho Privado 206-207; y 2 Castán, Derecho Civil Español, Común y Foral (7a ed. 1950) 114-124. O sea que la protección y defensa de la propiedad puede ejercitarse mediante cualquiera de estas acciones: ". . . la clásica y propia acción reivindicatoria que sirve de medio para la protección del dominio frente a una privación o una detentación posesoria, dirigiéndose fundamentalmente a la recuperación de la posesión, y la acción de mera declaración o constatación de la propiedad que no exige que el demandado sea poseedor, y tiene como finalidad la de obtener la declaración de que el actor es propietario de la cosa . . .". *Ibid.*, 115.

cuando resulta imposible legalmente la reivindicación del inmueble. Es decir, dicha acción de daños no es "subsidiaria" en el sentido de que nace cuando se extingue la de reivindicación. Se considera una acción equivalente o subsidiaria porque sustituye el cumplimiento natural adecuado de la obligación del ejecutante. Así por ejemplo, en una acción por violación de un contrato bilateral de promesa de venta, lo normal es exigir el cumplimiento específico mediante el otorgamiento de la correspondiente escritura de compraventa; pero si esto resulta imposible porque la propiedad ya no se encuentra en el patrimonio del promitente, entonces hay lugar al resarcimiento de los daños y perjuicios. Y claro está, el término de prescripción de la acción que tiene el beneficiario de la promesa corre desde la fecha del incumplimiento imputable al promitente. No se inicia la prescripción de la acción de indemnización de daños cuando la ejecución en forma específica resulta imposible. Tanto en ese caso hipotético como en el de autos, el derecho contractual lesionado puede ser reivindicado inmediatamente después que queda consumada la violación del mismo. Adviértase que el derecho contractual del deudor hipotecante queda definitivamente lesionado con el acto de la subasta. Por eso carece de importancia la regla procesal de que el ejecutivo sumario no termina con la subasta. Como señalamos anteriormente la adjudicación a favor del rematante en la subasta es una especie de compraventa y a partir de ese momento los bienes quedan *"vendidos"* según dispone la ley. El otorgamiento de una escritura posterior sólo sirve de título *a los fines de la inscripción en el registro*. En Puerto Rico para fines procesales únicamente se ha resuelto que el procedimiento ejecutivo hipotecario termina (1) ". . . con la posesión, la escritura y su inscripción", *Arroyo* v. *Zavala*, 40 D.P.R. 269; (2) ". . . con la posesión dentro de los treinta días, sin perjuicio de que la corte puede ordenar dicha posesión después de expirados esos treinta días, en el ejercicio de sus facultades discrecionales", *Gratacós* v. *Corte*, 46 D.P.R. 175;

(3) ". . . con la subasta y con el otorgamiento de la escritura . . .", *Salas* v. *Cabassa*, 69 D.P.R. 457. No tenemos que precisar cuándo termina en verdad el carácter sumarísimo del ejecutivo. Esa cuestión de carácter procesal no se plantea en el caso de autos. Véase el escolio núm. 3, supra.

 La doctrina sobre la iniciación de la prescripción que se adoptó en el caso de *Carmona* resulta también inaceptable por razones prácticas. La prescripción existe por motivos de necesidad y utilidad social. Como indica Castán, *op. cit.* supra, tomo I, pág. 705, ". . . asegura la estabilidad de la propiedad y la certidumbre de los demás derechos . . . [y] facilita o hace innecesaria la prueba de situaciones jurídicas perfectamente legales, que a veces serían de costosa o imposible justificación". Naturalmente el período de prescripción tiene que ser arbitrario hasta cierto punto, pero no debe fijarse en forma que resulte irrazonable. Ahora bien, hemos resuelto que la acción para solicitar la nulidad del ejecutivo hipotecario no prescribe nunca. Véanse *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412, 426–427 (1949); *Sucrs. de Huertas González* v. *Díaz*, 72 D.P.R. 537, 541 (1951); *Costas* v. *G. Llinás & Co.*, 66 D.P.R. 730, 741 (1946). Esto significa que la acción de daños y perjuicios contra el acreedor ejecutante, bajo la teoría de *Carmona*, podría en muchos casos instarse dentro de un término de quince años después de transcurrir los 30 años de la usucapión extraordinaria.[5] Tal situación sería irrazonable y peligrosa para la estabilidad económica y jurídica en Puerto Rico.

---

[5] Si la acción para el resarcimiento de los daños y perjuicios que causa el acreedor ejecutante al deudor nace o se origina cuando resulta imposible la acción de reivindicación (bien sea la "real" o la declaratoria), poco importa que tal imposibilidad se deba a la existencia de un título adquirido por la usucapión extraordinaria o de un título que se *mantiene* en el tercero por virtud del art. 34 de la Ley Hipotecaria. En ambos casos se trataría de la misma causa de acción. En efecto, la obligación que impone al acreedor ejecutante el art. 169 del Reglamento Hipotecario es la de ". . . indemnizar cuantos daños y perjuicios irrogare al deudor . . . por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el juez para autorizar el procedimiento y para continuarlo."

Aunque la acción para solicitar la nulidad del ejecutivo hipotecario no prescribe nunca porque "la prescripción no corre contra lo inexistente [y] el decurso del tiempo no puede insuflar vida a lo que legalmente nunca la tuvo", puede que sea imposible obtener la devolución de la finca y de los frutos. Así por ejemplo: (1) cuando el ejecutante vende la propiedad a otra persona que tiene la condición de tercero de acuerdo con el art. 34 de la Ley Hipotecaria, y (2) cuando el acreedor ejecutante adquiere un título por la usucapión extraordinaria. Cf. *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412, 424 (1949); *Díaz* v. *Quiñones*, 68 D.P.R. 249, 253–254 (1948); *Costas* v. *G. Llinás & Co.*, 66 D.P.R. 730, 740–741 (1946). Ya hemos indicado que la acción de daños y perjuicios basada en el art. 38 de la Ley Hipotecaria y en el art. 169 del Reglamento Hipotecario, no es "subsidiaria" en el sentido de que nace cuando resulta imposible legalmente la reivindicación del inmueble. Sólo sustituye el cumplimiento específico de la obligación del ejecutante: a saber, la devolución de la finca con sus frutos. Como la acción de daños prescribe a los 15 años a contar desde la fecha en que se adjudican los bienes por el alguacil en la subasta, la inacción del deudor podría colocarlo en una situación de desventaja si el acreedor ejecutante vende la propiedad a un tercero hipotecario poco tiempo antes de transcurrir esos 15 años. En tal caso, al vencerse el término de la acción de daños y perjuicios, el deudor perdería todos sus derechos. Pero esto no puede esgrimirse como una objeción válida contra nuestra teoría. El inconveniente apuntado surgiría de la incuria del propio deudor. Además es indispensable para la economía del país que en tal caso por el transcurso de 15 años se produzca un estado de derecho inatacable.

En suma: la adjudicación en favor del acreedor ejecutante, o sea el Banco Popular, fue hecha por el alguacil del extinto Tribunal de Distrito de San Juan, ante el cual se tramitó el ejecutivo sumario, el 26 de junio de 1934. Esa es la fecha que sirve de punto de partida para computar el

término de prescripción de quince años. Como la acción en el caso de autos se inició el 20 de junio de 1949, es evidente que no se hallaba prescrita. Fue, por tanto, un error del tribunal *a quo* declarar sin lugar la demanda por ese motivo.

*Debe revocarse la sentencia recurrida y devolverse el caso al Tribunal Superior, Sala de San Juan, para ulteriores procedimientos compatibles con esta opinión.* ([6])

El Juez Asociado Sr. Belaval disintió por las razones que expone en opinión separada.

El Juez Asociado Sr. Santana Becerra concurre únicamente con el resultado por los motivos que expresa en opinión separada.

_____

Opinión del Juez Asociado Sr. Santana Becerra concurriendo en la Sentencia.

A la luz de los hechos específicos del caso ahora ante nuestra consideración entiendo, como la mayoría del Tribunal, que la acción de daños aquí ejercitada no estaba prescrita al comenzarse la misma. Pero por creer que aún más importante que el resultado del caso en sí, que sólo afecta a las partes litigantes, es la norma de derecho de aplicación general que el Tribunal hoy sienta en el sentido de que la acción subsidiaria de daños de esta naturaleza siempre comienza a prescribir a partir del acto de la subasta en un ejecutivo hipotecario sumario, indistintamente de la situación particular en cada caso, me veo obligado a expresar mi inconformidad con la opinión de la mayoría. ([1])

Conforme a los autos, el 15 de marzo de 1934 el Banco Popular de Puerto Rico inició procedimiento sumario de ejecución de hipoteca contra la Sucesión de Magdalena Méndez Vda. de Ríos, dictándose en igual fecha auto de requerimiento

([6]) Véanse *Paradís* v. *Fernández,* 47 D.P.R. 321, 329-330 (1934); *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655 (1931) y *Arvelo* v. *Banco Territorial y Agrícola de Puerto Rico,* 25 D.P.R. 728 (1917).

([1]) Esta opinión toma el caso tal como nos ha llegado, en donde la nulidad del ejecutivo sumario fue aceptada por la parte demandada, por lo que no es preciso entrar en ese aspecto.

que fue diligenciado el 20 de marzo de 1934 en la persona de la recurrente María Ríos Méndez como heredera y componente de dicha sucesión, y mediante la publicación de edictos. El 31 de mayo de 1934 la entonces Corte de Distrito de San Juan ordenó la venta en pública subasta de la finca hipotecada, disponiendo que dicha orden tenía la fuerza de un auto ordenando la posesión dentro del plazo de 30 días contados desde la venta. El 26 de junio de 1934 se celebró la subasta, que terminó adjudicándose al acreedor hipotecario la finca por no haber otros postores. El 30 de junio de 1934, por escritura 27 ante el Notario Don Damián Monserrat, el alguacil transfirió la finca al adjudicatario sin reserva ni limitación alguna, entregándosela y dándole posesión de la misma en ese acto. La propiedad se inscribió en el Registro a favor del Banco acreedor el 6 de julio de 1934, quien la retuvo en su posesión hasta el 16 de noviembre de 1934 en que por escritura 34 ante el mismo notario la traspasó a tercera persona.

El 21 de junio de 1949 la recurrente radicó demanda contra el Banco sobre nulidad de ejecutivo hipotecario, daños y perjuicios. En el párrafo noveno de la demanda alegó textualmente:

"Noveno.—Que del asiento de la inscripción practicado en el Registro de la Propiedad de San Juan, a favor del Banco Popular de Puerto Rico, por virtud de la escritura de venta judicial que le otorgó el Marshal del Tribunal de Distrito de San Juan, sobre la finca descrita en el párrafo tercero de la primera causa de acción de esta demanda, no resultan afirmativa y claramente las causas que producen la nulidad del referido procedimiento ejecutivo, por lo que, la demandante se encuentra imposibilitada de ejercitar legalmente la acción reivindicatoria contra el actual poseedor del inmueble ejecutado."

Así reconoció la condición de tercero de buena fe de la persona que adquirió del Banco ejecutante, y éste aceptó tal hecho, y aceptó también la nulidad del ejecutivo sumario. Alegó, no obstante, que la acción de nulidad que se ejercitaba "siendo

la subsidiaria de daños y perjuicios de acuerdo con lo que dispone el artículo 38 de la Ley Hipotecaria y el artículo 1864 del Código Civil", estaba prescrita.

No hay controversia entre las partes en cuanto al término prescriptivo de 15 años para la acción de daños que se ejercitó. La única discrepancia, a la cual está limitado este recurso, fue en cuanto al momento en que los referidos 15 años debieron comenzar a contarse. El Banco demandado sostuvo ante el tribunal a quo que habiéndose ordenado la venta de la finca el 31 de mayo de 1934 la demanda radicada en 20 de junio de 1949 (²) lo fue 15 años 20 días después. La demandante sostuvo que la demanda se radicó en tiempo a contar desde el 6 de julio de 1934, fecha en que se inscribió la finca en el Registro a favor del acreedor ejecutante y quedó terminado el procedimiento. El Tribunal Superior resolvió que el término de 15 años debía contarse a partir del 20 de marzo de 1934 en que se diligenció el requerimiento de pago y este Tribunal, revocándolo, resuelve hoy que se debe contar el período prescriptivo desde la fecha de la subasta, 26 de junio de 1934. Veamos:

En términos sencillos y meridianamente claros resolvimos ese problema hace cuarenta y cinco años en *Carmona* v. *Cuesta*, 20 D.P.R. 229 (marzo 30, 1914). Los legítimos dueños de una finca que fue objeto de un expediente de dominio nulo por falsedad en la exposición de los hechos instituyeron acción reivindicatoria. Fracasada la reivindicación porque la finca había pasado ya a poder de tercero según el Registro, lo que ocurrió en el año 1906, reservamos a los dueños allí demandantes la acción personal de daños y perjuicios contra quien se los hubiera causado. Esa sentencia la dictamos en 29 de marzo de 1912. Véase: *Carmona* v. *Cuesta*, 18 D.P.R. 180. A tenor con nuestro dictamen, el 15 de abril de 1913 los dueños iniciaron la acción de daños contra el promovente del expediente de dominio declarado nulo. Se suscitó la cues-

(²) Se radicó el 21 de junio de 1949.

tión de prescripción la cual prosperó en la corte inferior que aplicó la de un año del art. 1868 del Código Civil dispuesta para las acciones derivadas de culpa o negligencia a que se refiere el art. 1802 del propio Código. Revocando la sentencia que declaró prescrita la demanda, nos expresamos así después de resolver que esta acción de daños es *ex-contractu* y no la derivada de culpa o negligencia del art. 1802:

"Ahora bien, según el artículo 354 del Código Civil el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla. Es decir, que el propietario, como dice la representación de la parte apelante, tiene su acción real, directa y *primera*, para sostener su derecho de propiedad contra una tenencia o posesión adversa o injusta. El término de prescripción de dicha acción es de 30 años según el artículo 1864 del Código Civil.

"Puede suceder que el bien inmueble que se trate de reivindicar se encuentre en poder de un tercero con título inscrito en el registro de la propiedad, y que la acción reivindicatoria no pueda ser eficaz contra aquél. Para tal evento previene el artículo 38 de la Ley Hipotecaria en su último párrafo que 'en todo caso en que la acción resolutoria o rescisoria no pueda dirigirse contra el tercero, conforme a lo dispuesto en dicho artículo, se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado.'

"Con el anterior precepto concuerda el contenido en el segundo apartado del artículo 1262 del Código Civil, expresivo de que la rescisión no tendrá lugar cuando las cosas objeto del contrato se hallaren legalmente en poder de terceras personas que no hubiesen procedido de mala fe, en cuyo caso podrá reclamarse la idemnización de perjuicios al causante de la lesión.

"Los demandantes, según los hechos alegados en la demanda, tenían el derecho de reivindicar la finca de 40 cuerdas a que se refieren, y para ello ejercitaron la acción reivindicatoria que les reconocía el artículo 354 del Código Civil; pero la acción fue desestimada declarando expresamente esta Corte Suprema por su sentencia de 29 de marzo de 1912, al resolver el caso en grado de apelación, ser nulo en su fondo el expediente de dominio promovido por Cuesta Viyeyas que sirvió de título de propiedad para la venta de la finca hecha por Viyeyas a Soldini y por éste a Mary Leicht. Por no haber prosperado la acción reivindicatoria ejer-

citada, esta Corte Suprema reservó a los ahora demandantes, su acción personal para reclamar la indemnización de daños y perjuicios a quien se los hubiera causado. Esa acción de daños y perjuicios nace de los hechos determinantes de la acción reivindicatoria y del hecho de no haber podido ésta prosperar por existir un obstáculo legal para ello, cual es la adquisición, de la finca en cuestión por un tercero que legalmente no puede ser compelido a su restitución. No tiene la acción de daños y perjuicios en el presente caso el carácter de principal sino de subsidiaria, en atención a existir un impedimento legal para que prospere la acción reivindicatoria, y es un remedio que el legislador ha reconocido al dueño de la finca para que ya que no puede reivindicarla pueda llegar mediante dicha acción a la reparación de su derecho lesionado.

"Como se ve, la acción de daños y perjuicios ejercitada no es la acción para exigir responsabilidad por culpa o negligencia, a que se refiere el número 2 del artículo 1869 del Código Civil, y no es por tanto aplicable al presente caso el precepto sobre prescripción por un año, que dicho artículo establece. Se trata de una acción personal que no tiene señalado término especial de prescripción y que por tanto prescribe a los quince años con arreglo al artículo 1865 del Código Civil."

Expuesta de la manera anterior la naturaleza de esta clase de acción de daños y el lugar que la misma ocupa, afrontamos el problema ahora específicamente ante nuestra consideración y dijimos:

"El tiempo para la prescripción, según el artículo 1870 debe contarse desde el día en que pudo ejercitarse, o sea desde el año 1906 en que fue inscrita la finca en el registro de la propiedad a favor de tercero. La prescripción no se ha interrumpido por el ejercicio de la acción reivindicatoria que fue declarada sin lugar, pues según doctrina aceptable del Tribunal Supremo de España, establecida en sentencia de 5 de julio de 1904, para estimar que se ha interrumpido el plazo de prescripción de una acción determinada, es indispensable que se haya ejercitado dicha acción, no otra con que ella tenga mayor o menor analogía, sin que por tanto sea aplicable al presente caso el artículo 1874. La demanda para indemnización de daños y perjuicios fue archivada en 15 de abril de 1913. No cabe, pues, afirmar que ha prescrito la acción por el transcurso de los 15 años señalados por la ley, y

en su consecuencia la corte cometió error al desestimar la demanda por prescripción de la acción mediante aplicación indebida del número 2 del artículo 1869 del Código Civil, y falta de aplicación del artículo 1865. ¿Pero podría sostenerse la sentencia por el fundamento de la otra excepción alegada, o sea, de que los hechos no determinan una causa de acción?

"Examinados esos hechos y apreciados en su conjunto entendemos que determinan la acción de daños y perjuicios ejercitada en la demanda y que reconoce el artículo 38 de la Ley Hipotecaria, congruente con el 1262 del Código Civil."

La decisión de *Cuesta* tuvo por base un expediente de dominio declarado nulo, pero el principio en ella establecido en cuanto a la naturaleza de la acción de daños aquí ejercitada, su término prescriptivo y su característica de ser una acción subsidiaria lo hemos mantenido en pie por igual en las acciones de daños y perjuicios seguidas como consecuencia de un procedimiento ejecutivo sumario declarado nulo, en donde el deudor quedó despojado de su propiedad y en que, por haber un tercero de por medio, no procedía la acción resolutoria. Véanse: *Arvelo* v. *Banco Territorial,* 25 D.P.R. 728; 29 D.P.R. 1066; *Polanco* v. *Goffinet,* 29 D.P.R. 120; *Pontón* v. *Sucrs. Huertas González,* 42 D.P.R. 529; *Román Benítez* v. *Rivera,* 43 D.P.R. 535; *Gutiérrez Vda. de Crosas* v. *Longpré,* 44 D.P.R. 667; *Santana* v. *Orcasitas,* 47 D.P.R. 735; *F. Rodríguez Hnos. y Co.* v. *Aboy,* 66 D.P.R. 525; *Buil* v. *Banco Popular,* 69 D.P.R. 254.

Jamás la decisión de *Cuesta* ha sido modificada en ese aspecto, a pesar de que la profesión en casos posteriores ha insistido, sin éxito, en el término prescriptivo de un año en lugar del período de quince años fijado en ella. En su otro aspecto, en lo que toca al punto de partida para comenzar a contar dichos quince años, la cuestión no había vuelto a suscitarse, no sabemos si debido a lo claro y convincente de la norma sentada, a que no volvió a surgir la situación, o al hecho de que los litigantes prefirieron tratar de alterar el período. El caso de *Arvelo* v. *Banco Territorial,* supra, que se cita como ejemplo de que el período de quince años debe

contarse desde la subasta y no del auto de requerimiento, argumentándose que de haberse contado en ese caso a partir del requerimiento la acción de daños, que nos negamos a declarar prescrita, lo hubiera estado, no alteró en lo más mínimo lo resuelto en *Cuesta*. Como cuestión de realidad, la controversia en *Arvelo* fue en cuanto a si el período prescriptivo debía ser de quince o de un año, no estaba envuelto el punto de partida, y la decisión de *Cuesta* fue reafirmada y seguida en ese caso.

Un deudor hipotecario a quien se le priva de su propiedad en virtud de un procedimiento ejecutivo nulo tiene derecho a ejercitar la acción que le concede el art. 280 del Código Civil, ed. 1930, (art. 354 ed. 1902) para reivindicar la cosa contra el poseedor y tenedor de la misma. Pero muchas veces esto él no puede hacerlo porque la cosa está fuera de su alcance, como resulta cuando se aplican los arts. 33, 34, 36 y 38 de la Ley Hipotecaria y el 175 de su Reglamento, según este último quedó enmendado por la Ley 81 de 13 de mayo de 1936; o como resulta también en forma análoga, de lo que provee el art. 1247 del Código Civil.(³)

---

(³) *Artículo 33 Ley Hipotecaria.*—"La inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes."

*Artículo 34.*—"No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el Registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, *una vez inscritos,* aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo Registro."

" * * * * * * * *

*Artículo 36.*—"Las acciones rescisorias y resolutorias no se darán contra tercero *que haya inscrito* los títulos de sus respectivos derechos conforme a lo prevenido en esta ley."

*Artículo 38.*—"En consecuencia de lo dispuesto en el artículo 36, no se anularán ni rescindirán los actos o contratos en perjuicio de tercero *que haya inscrito su derecho,* por ninguna de las causas siguientes:

" * * * * * * * *

"En todo caso en que la acción resolutoria o rescisoria no se pueda dirigir contra el tercero, conforme a lo dispuesto en este artículo, se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado."

Sin embargo, el deudor no está indefenso. Si la acción resolutoria o rescisoria no fuere posible por estar la cosa en manos de un tercero *que hubiere inscrito su derecho,* o en poder legal de tercera persona que no hubiere procedido de mala fe, puede ejercitar la acción de daños y perjuicios contra el que los hubiera causado,—Art. 38 Ley Hipotecaria—o contra el causante de la lesión, según el art. 1247 del Código Civil.

En este caso no hay que preocuparse por la acción primera y directa resolutoria o reivindicatoria porque la propia demandante aceptó la condición de tercero intocable de la persona que adquirió la propiedad del banco acreedor. El único problema surge en cuanto a la acción subsidiaria de daños en lo pertinente a su prescripción. Reza el art. 1864 del Código Civil (ed. 1930) que las acciones personales que no tengan señalado término especial de prescripción prescribirán a los quince años; y el art. 1869, que lo complementa, dispone que el tiempo para la prescripción de toda clase de acciones cuando no haya disposición especial que otra cosa determine [como sucede en este caso], *se contará desde el día en que pudieron ejercitarse.* ¿Qué quiere decir "poder ejercitarse" a los efctos de este artículo?

---

*Artículo 175—Reglamento.*

" * * * * * * * *

"Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo; *pero los efectos de tales reclamaciones quedarán sujetos a lo dispuesto en el artículo 34 de la Ley Hipotecaria en lo que respecta a terceros adquirentes,* si del registro no resultasen claramente los motivos de la acción ejercitada."

" * * * * * * * *

*Artículo 1247—Código Civil.*

" * * * * * * * *

"Tampoco tendrá lugar la rescisión cuando las cosas objeto del contrato *se hallaren legalmente en poder de terceras personas* que no hubiesen procedido de mala fe.

"En este caso podrá reclamarse la indemnización de perjuicios al causante de la lesión."

*Manresa*, comentando el art. 1969 del Código Civil Español, equivalente al 1869 nuestro, dice que "[E]n la prescripción de acciones es aún más importante que en la del dominio la materia relativa a la computación del término señalado para que se produzca o consolide la misma, puesto que en ella no se exige ningún otro requisito para dicho fin más que el transcurso de tiempo; y, por consiguiente, tiene mayor interés que en ningún otro caso cuanto se refiera al modo cómo deba contarse éste." Refiriéndose al art. 1869 como una regla "supletoria", y citando sentencias del Tribunal Supremo de España de 22 de noviembre de 1902 y de 8 de mayo de 1903, sostiene Manresa que "no deben tenerse en cuenta para la determinación del momento en que debe empezar a correr el término de la prescripción para la computación del mismo, ninguna razón ni circunstancia que no afecte a la *posibilidad legal* del ejercicio de la acción que ha de ser prescrita. (Énfasis del autor.) (⁴)

En parecida forma se expresan otros comentaristas. *Sánchez Román* dice que "ninguna explicación exige el artículo 1.969 del Código, [1869] a no ser: primero, la indicación de que sus últimas palabras deben entenderse alusivas a la *posibilidad jurídica* del ejercicio de la acción, o sea el tiempo desde el cual la acción puede ejercitarse según derecho, a partir de cuya fecha se computará el tiempo para su prescripción;" (⁵) . . . . . . . . (Énfasis del autor.) Y *Castán*, después de expresar que la determinación del momento inicial de la prescripción ha suscitado dificultades y dudas en la doctrina, dice que "[E]s tradicional la teoría de la *actio nata*, según la cual para que la prescripción sea posible es preciso que la acción haya nacido, pues, como decía Savigny, 'no cabe perder por abandono una acción mientras no sea ejercitable'. Más, aun cuando se acepte la regla *actioni nundum natae non preascribitur*, con ello—como advierte Venzi (en sus notas a las Instituzioni de Pacifici-Mazzoni)—no está resuelta la

---

(⁴) Comentarios al Código Civil, tomo 12, págs. 944–945—5ta. ed. (1951).
(⁵) Estudios de Derecho Civil, tomo 3, pág. 296, 2a ed. (1900).

'cuestión, pues queda por determinar el punto fundamental, o
·sea cuándo puede decirse que la acción ha nacido. Las mu-
·chas respuestas dadas a esta pregunta pueden, según Venzi,
·resumirse en dos teorías fundamentales y contrapuestas: la
·de la *realización* y la de la *lesión* del derecho. La acción ha
nacido, dicen unos, cuando el derecho puede ser realizado; la
acción ha nacido, dicen otros, cuando el derecho ha sido
lesionado o violado. Para este autor, ambas son exactas
cuando son entendidas convenientemente y aplicadas a las
relaciones que les son propias. El criterio de la realización
se aplica, por regla general, a los derechos personales, y el
de la lesión a los derechos reales, porque en los primeros el
contenido de la acción se confunde con el del derecho, y en
los segundos permanecen separados.

"Nuestro Código Civil provee a esta importante materia
del comienzo de la prescripción extintiva con una regla gene-
ralísima, y varias normas particulares.

"La regla general no hace otra cosa que consagrar el
principio de la *actio nata*. 'El tiempo para la prescripción
de toda clase de acciones, cuando no haya disposición especial
que otra cosa determine, se contará desde el día en que pudie-
ron ejercitarse' (Art. 1.969)." [6] (Énfasis del autor.)

*Laurent*, con suma precisión resume el punto así: "[L]a
prescripción de las acciones personales comienza desde el mo-
mento en que nacen las acciones, puesto que es en razón de la
duración de la acción por lo que la ley la declara extinguida;
luego *desde que hay acción* ha lugar a la prescripción porque
la razón de la prescripción existe: ¿y cuando hay acción? La
acción *es el derecho ejercido en justicia,* y el acreedor puede
obrar en justicia desde que se forma la obligación. En efecto,
es de esencia de todo derecho poderse perseguir judicialmente,
ese es el carácter distintivo de la obligación jurídica, está ga-

---

[6] Derecho Civil Español, Común y Foral, tomo 1, Vol. 2, págs. 716–717,
9a ed. (1955), citando sentencias de 1 de junio de 1900, la de 8 de mayo de
1903 y de 22 de diciembre de 1945.

rantizada por la ejecución forzada, y esa ejecución forzada no es más que el recurso a los tribunales . . . ."(⁷) (Énfasis ofrecido.)

Nuestra jurisprudencia ha seguido esos mismos principios: Cf: *Iglesia Católica* v. *El Pueblo*, 11 D.P.R. 485; *Martí* v. *Hernández*, 57 D.P.R. 819; *Alcaide* v. *Morales*, 28 D.P.R. 278, en donde el período de 15 años de una acción para anular un reconocimiento se contaron, no a partir de dicho reconocimiento hecho en 1900, sino a partir de 1904 cuando el padre pudo cerciorarse de su estado de esterilidad, habiéndose establecido la acción en 1916; *Rossy* v. *Martínez*, 70 D.P.R. 737; *Lange* v. *Honoré*, 47 D.P.R. 218; *Stella* v. *Municipio*, 76 D.P.R. 783; *Cordero* v. *Rivera*, 74 D.P.R. 586; *Malgor y Co.* v. *Clivillés & Co., Sucrs.*, 42 D.P.R. 457; art. 37, Cód. Enj. Civil—"las acciones civiles podrán deducirse solamente dentro de los períodos prescritos en este título, *luego de existir su causa legal.*"

Se resuelve hoy que la acción subsidiaria de daños era ejercitable desde el día en que se celebró la subasta. A los efectos del problema planteado y de los argumentos que se aducen para tomar como punto de partida ese día, no creo que exista gran diferencia en que se usara la fecha del requerimiento, según sostuvo el Tribunal Superior, o la fecha de la orden de venta como sostuvo ante dicho tribunal el Banco, porque si bien el auto de requerimiento no tiene el efecto *per se* e inmediato de privar *de hecho* al deudor de la posesión, goce y disfrute de la propiedad, tampoco lo tienen la orden de venta ni la subasta, que no pone fin al procedimiento porque éste termina con el otorgamiento por el alguacil de la escritura de venta judicial y su acto de dar posesión del inmueble al adjudicatario; ni crea la subasta automáticamente

---

(⁷) Derecho Civil Francés, Tomo 32, págs. 28–29, (1900). Véanse además: las sentencias del Tribunal Supremo de España reseñadas por Medina y Marañón al calce del artículo 1969, *Leyes Civiles de España*, pág. 649; y por Rodríguez Navarro, *Doctrina Civil del Tribunal Supremo*, Tomo IV, pág. 6102, al calce del mismo artículo.

la condición de tercero que *hubiere inscrito su derecho* en la persona del adjudicatario suponiendo que éste no sea el propio acreedor ejecutante, no siendo tampoco inscribible el acta de subasta. Véanse: *Rosaly* v. *Ríos*, 63 D.P.R. 836; *Hernández* v. *Registrador*, 66 D.P.R. 863; *Salas* v. *Cabassa*, 69 D.P.R. 457; *Gratacós* v. *Corte*, 46 D.P.R. 175.

El caso de *González* v. *Díaz*, 72 D.P.R. 537, ilustra la situación. En 1927 se ejecutó un crédito hipotecario y subastada la propiedad se le adjudicó a la propia acreedora ejecutante, otorgándose a su favor, además, la escritura de venta judicial. No obstante la adjudicación en subasta, los deudores nunca se desprendieron de la posesión, y en 1944, dándose cuenta que el ejecutivo era nulo por haberse diligenciado el auto de requerimiento por persona particular, la propia acreedora ejecutante inició pleito para que se declarara su nulidad y se condenara a los deudores a satisfacer el préstamo hipotecario y sus intereses desde que se constituyó el mismo. A pesar de la adjudicación en subasta en el ejecutivo sumario de 1927 y la escritura de venta judicial, sostuvimos la acción de la acreedora instituída en 1944.

Pero volviendo al art. 1869 y al criterio de los comentaristas y nuestras decisiones, la pregunta es: ¿Cuándo había la "posibilidad legal" para la demandante de la acción de los daños que reclama (el valor de la propiedad y sus rentas) bajo los hechos precisos de este caso? ¿Le hubiera sido posible reclamarlos al otro día de la *subasta* cuando ella estaba en posesión del inmueble y no procedía siquiera la acción directa reivindicatoria que concede a todo propietario el art. 280 del Código Civil? ¿Podía ella legalmente ejercitar la acción de daños una vez que el Banco vino en posesión del inmueble y mientras lo disfrutaba, cuando la presencia de un tercero que *hubiere inscrito su derecho* no quitaba la propiedad del alcance de la demandante para reivindicarla? Me parece que la contestación a esas preguntas debe ser en la negativa. Entre junio 30 de 1934 fecha en que el Banco entró en posesión de la finca y noviembre 16, 1934 en que la traspasó a un tercero

reconocido como tal por la demandante, la acción de ésta era la resolutoria o reivindicatoria, y no otra, porque según el art. 1869, tal como se ha interpretado, fue a partir de esta última fecha que le "nació" a ella la acción de los daños que reclama, y es a partir del nacimiento de dicha acción que comienza a prescribir la misma.(8) El derecho de la demandante a reclamar como daños el valor de la propiedad y sus rentas o frutos no surgía del hecho del ejecutivo sumario nulo y la venta de la propiedad en subasta. Le surgía de (1) la nulidad del procedimiento, *más* (2) del hecho de no poder ejercer la acción reivindicatoria o resolutoria para reposeerse la finca. Ambos requisitos vinieron a coexistir sólo a partir del 16 de noviembre de 1934.

Lo que el Tribunal hoy decide tiene el efecto jurídico, sin decirlo, de alterar la naturaleza que a este tipo de acción de daños da el art. 38 de la Ley Hipotecaria o en su caso el 1247 del Código Civil, de secundaria o subsidiaria, para convertirla en una acción directa, optativa y en la alternativa, en donde podía quedar al capricho de la demandante o, reivindicar el inmueble bajo el art. 280 del Código Civil, o pedir daños en su lugar. Esto último no responde a nuestras decisiones, y en *Palmieri* v. *Federal Land Bank*, 59 D.P.R. 4 positivamente dijimos que no podía ejercerse tal opción o acción en la alternativa. En este caso de *Palmieri* la demandante hizo anotación de *lis pendens*, en acción filiatoria. En trámites la acción, el Federal Land Bank ejecutó una hipoteca constituída a su favor por los herederos del presunto padre y se adjudicó la propiedad, vendiéndola a terceros. La demandante, declarada ya hija natural, solicitó la nulidad del procedimiento pero sólo demandó en daños al Banco alegando que la propiedad había pasado a terceras personas. Sosteniendo que ella

---

(8) Realmente la doctrina correcta es a partir de la *inscripción en el registro* que es cuando surge el tercero de los arts. 34, 36 y 38 de la Ley Hipotecaria y 175 del Reglamento. No hay constancia en los autos de cuándo el adquirente del Banco inscribió a su favor, pero como nunca pudo haber sido antes de noviembre 16, 1934, ello no afecta mi conclusión.

podía ejercer la acción directa reivindicatoria contra los terceros por haber adquirido éstos anotada ya la demanda (*lis pendens*), nos negamos a reconocerle la acción personal de daños, citando extensamente la decisión de *Cuesta* para concluir, que distinto a lo ocurrido en ese caso, en el de *Palmieri* no había terceros que impidieran la acción primera y directa de reivindicación.

No veo razón de peso para revocar la decisión de *Cuesta*, que es buena jurisprudencia sazonada por casi medio siglo de vida legal, y que a mi juicio resuelve correctamente la situación hipotecaria y de derecho civil aquí envuelta. [9] Advierto cierta preocupación por lo amplio que pueda resultar el período prescriptivo que surge de ella. Pero no debe perderse de vista que esta acción de daños, si bien personal, tiene su origen y está íntimamente ligada al derecho inmobiliario, para el cual el código no tiene períodos prescriptivos breves. Sabido es que no siempre se logra conocer con razonable prontitud los vicios de un ejecutivo sumario, sobre todo cuando no son procesales que surjan de la faz del expediente; el caso típico del deudor que fallece antes o después de la ejecución y hay sucesiones envueltas, o cuando la nulidad se advierte como consecuencia de un dictamen jurisprudencial. De todos modos ello sería más bien un problema de legislación y de política pública que de determinación judicial. Desde la decisión de *Cuesta*, como cuestión de realidad, se han reunido muchas Asambleas Legislativas y nunca se ha tratado de modificar por ley lo allí resuelto. [10]

---

[9] Como observamos en *Crosas* v. *Longpré*, supra, esta decisión fue citada con aprobación y seguida por la Corte Suprema de Filipinas en *Cangco* v. *Manila Railroad Co.*, 38 Jur. Fil. págs. 816, 822.

[10] Hasta qué punto son armonizables un período prescriptivo de 15 años a partir de fecha fija, la subasta, con el otro principio reafirmado de manera incondicional de que la acción de nulidad de ejecutivo hipotecario no prescribe nunca, cuando los daños son un derivado de la nulidad, *quaere*. La determinación judicial de la nulidad del ejecutivo, aunque se haga en el mismo pleito de daños precede a éstos, y hemos resuelto que un tribunal no viene obligado a pasar sobre los daños si determina que el ejecutivo no es nulo. Cf: *Martorell* v. *Crédito y Ahorro*, 42 D.P.R. 655; *Petterson* v. *Contreras*, 42 D.P.R. 491.

Finalmente, se insinúa que de aplicarse la doctrina de *Cuesta* podría extenderse el período prescriptivo hasta quince años después del período de treinta para la prescripción adquisitiva del dominio. Esto podría ocurrir sólo si durante ese período posee la propiedad el propio acreedor ejecutante, y no ocurriría porque la prescripción adquisitiva le daría a él un mejor título que el adquirido mediante el ejecutivo nulo, pero nunca lo convertiría en un tercero ante el deudor. Seguiría siendo la parte, y no procedería entonces la acción subsidiaria personal que como he dicho, sólo procede si se interpone el tercero de los arts. 34, 36, 38 de la Ley Hipotecaria y el 175 de su Reglamento.

---

Opinión separada del Juez Asociado señor Belaval.

Este estudio está limitado a considerar la prescripción de las distintas acciones de nulidad de procedimientos ejecutivos sumarios y daños por cobro de intereses en demasía, de acuerdo con nuestro derecho hipotecario. Observo que en nuestra jurisprudencia anterior, indistintamente se ha aplicado el art. 38 de la Ley Hipotecaria de 1893 y el art. 169 del Reglamento para la ejecución de la misma, como la disposición legal que autoriza la acción de nulidad de procedimientos ejecutivos hipotecarios por cobro de intereses en demasía, y su correspondiente indemnización de daños. Es conveniente hacer un análisis riguroso de la cuestión para dejar este asunto debidamente esclarecido.

El art. 36 de la Ley Hipotecaria de Puerto Rico, dispone que las acciones rescisorias y resolutorias no se darán contra terceros que hayan inscrito los títulos de sus respectivos derechos. El art. 37 exceptúa de la regla anterior: 1º—las acciones rescisorias de enajenaciones hechas en fraude de acreedores en los siguientes casos: (*a*) cuando la segunda enajenación haya sido a título gratuito y (*b*) cuando el tercero haya sido cómplice en el fraude. En ambos casos (*a*) y

(*b*), no perjudicará a tercero la acción rescisoria que no se hubiere entablado dentro de un año, contado desde el día de la enajenación fraudulenta.

El art. 38 de la Ley Hipotecaria establece que no se anularán los actos o contratos, en perjuicio de tercero que haya inscrito su derecho por: (1) la revocación posterior de donaciones en los casos permitidos por la ley, excepto aquel en que el donatario no haya cumplido condiciones inscritas en el Registro; (2) el retracto legal en la venta y el derecho de tanteo en la enfiteusis; (3) la falta de pago del total o parte del precio de la cosa vendida, si no consta en la inscripción el aplazamiento de dicho pago; (4) la doble venta si alguna de ellas no hubiera sido inscrita; (5) los contratos que pudieran celebrar los tutores sin autorización de la sala competente del Tribunal Superior, siempre que las personas a quienes representen no hayan sufrido lesión en más de la cuarta parte del valor de las cosas que hubiesen sido objeto de dichos contratos; (6) los contratos celebrados en representación de los ausentes, siempre que dichos ausentes no hayan sufrido lesión en más de la cuarta parte del valor de las cosas que hubiesen sido objeto de dichos contratos; (7) las enajenaciones verificadas en fraude de acreedores, con exclusión de las hechas a título gratuito y cuando el tercero haya sido cómplice en el fraude; (8) cualesquiera otras acciones que las leyes concedan a determinadas personas para rescindir contratos en virtud de causas que no consten expresamente de la inscripción.

Es en estos supuestos, y en ningunos otros, que el art. 38 establece, que si la acción resolutoria o rescisoria no se puede dirigir contra el tercero, se ejercitaría por el ejecutado la personal correspondiente a la indemnización de daños y perjuicios.

Roca Sastre, ha hecho una clasificación de las acciones de nulidad, propiamente dichas, las resolutorias, las rescin-

dibles, dividiéndolas en cuatro grupos: acciones de nulidad, acciones rescisorias, acciones resolutorias y otras acciones de juego análogo.

Entre las acciones de nulidad sitúa (1) *la de nulidad por inexistencia,* o sea, cuando un negocio jurídico adolece de un vicio o defecto constitucional por faltarle alguno de sus elementos orgánicos o estructurales (art. 1213 del Código Civil nuestro); *la de nulidad absoluta o radical,* cuando se ha realizado un acto o negocio jurídico con infracción de una norma legal prohibitiva (art. 4 y 1207 nuestros); *la de anulabilidad,* cuando un acto o negocio jurídico adolece de algún vicio por razón de la capacidad o consentimiento de los otorgantes, (art. 1252 nuestro).

Entre las acciones rescisorias sitúa (2) la atribuída a los pupilos y a los ausentes en los casos 1º y 2º del art. 1243 nuestro; la concedida a los que en una partición o división hubieren sufrido lesión en más de una cuarta parte, (arts. 1027, 1340 y 1031 nuestros); la llamada acción pauliana o revocatoria dirigida a inutilizar las enajenaciones hechas en fraude de acreedores.

Entre las acciones resolutorias sitúa: el pacto de la *lex commissoria* que corresponde al vendedor cuando se hubiera estipulado que por falta de pago del precio aplazado tendrá lugar, de pleno derecho, la resolución de la compraventa, (art. 1393 nuestro); el pacto de retrovendendo o de retracto convencional o sea la compraventa a carta de gracia o con derecho de retraer, (art. 1396 nuestro); la revocación de donaciones cuando el donatario haya dejado de cumplir alguna de las condiciones impuestas por el donante, (art. 589 nuestro); la reversión de las donaciones otorgadas con pacto reversional (art. 583 nuestro); la restitución de bienes heredados o legados con el gravamen de substitución fideicomisaria condicional.

Entre las acciones de juego análogo, sitúa la revocación de donaciones por causa de supervivencia o sobrevivencia de hijos o por ingratitud del donatario (art. 586 nuestro); la

reducción de donaciones por ser inoficiosas a causa de la legítima (arts. 578 y 596 nuestros), la acción resolutoria por incumplimiento imputable de obligaciones recíprocas (art. 1077); las derivadas de la sujeción de bienes a la reserva clásica (art. 930 nuestro); la acción de recobro de bienes atribuída al ausente que viviendo ha sido objeto de declaración de fallecimiento; la revocación relativa a donaciones con entrega de bienes en concepto de mejora (art. 754 nuestro); la ineficacia de donaciones matrimoniales cuando el matrimonio no llegare a celebrarse (art. 1285 nuestro); la caducidad o reversión en materia de concesiones administrativas (minas, obras públicas, etc.) las cuales constituyen una situación de propiedad resoluble o temporal; la pérdida del dominio útil por efecto del comiso enfitéutico (art. 1540 nuestro) I Roca Sastre, Derecho Hipotecario 443–449, (quinta ed. de la casa Editorial Bosch, 1954).

Se podría argüir que antes del 1916, cuando al igual que en la ley española de 23 de julio de 1908, los contratos con intereses usurarios en Puerto Rico, se consideraban totalmente nulos, tal nulidad podría ser incluída entre las acciones por nulidad absoluta o por ser rescindible. El efecto que esto pueda tener en cuanto a la validez de un procedimiento ejecutivo hipotecario, lo dejamos sin resolver en *Vázquez Vda. de McCormick v. Gutiérrez*, 52 D.P.R. 170 (Hutchison), (1937), cita precisa a la pág. 179. Pero después de la enmienda que se le hace en el 1916 a nuestra Ley sobre Fijación de Interés en Toda Clase de Obligaciones del 1902, no hay duda que tales contratos no son nulos ni rescindibles. Sencillamente se provee una confiscación de parte del capital prestado a favor de El Pueblo de Puerto Rico; se autoriza una acción estatutaria independiente para el recobro de los intereses en demasía y se fija en un año la prescripción para el ejercicio de la acción de recobro.

Nuestra jurisprudencia anterior tiene rigurosamente distinguido el verdadero espacio jurídico que ocupan estas acciones de anulabilidad, rescisorias y resolutorias, autorizadas

por el art. 38 de nuestra Ley Hipotecaria: *García* v. *De los Ángeles*, 13 D.P.R. 77, (Quiñones), (1907), cita precisa a la pág. 98 (reserva de bienes); *Porto Rico Tobacco Co.* v. *Registrador*, 13 D.P.R. 164 (Quiñones), (1907), cita precisa a la pág. 167 (reserva de bienes); *Ramos* v. *Orcasitas*, 14 D.P.R. 68 (Figueras), (1908), cita precisa a las págs. 75 y 78 (doble venta); *Abella* v. *Antuñano*, 14 D.P.R. 498 (Hernández), (1908), cita precisa a las págs. 504 y 507 (doble venta); *Torrellas* v. *Sanabria y Paoli et al*, 26 D.P.R. 619 (Del Toro), (1918), cita precisa a la pág. 623, (doble venta); *A. Rojas & Co.* v. *Luna*, 39 D.P.R. 838, (Hutchison), (1929), cita precisa a la pág. 841 (doble venta); *Pérez* v. *Montañez*, 45 D.P.R. 23, (Del Toro), (1933), cita precisa a las págs. 27–28 (doble venta).

Por la enumeración de las causas de acciones, que en alguna forma pueden estar comprendidas dentro del art. 38, concordado con el art. 33 y siguientes, de la Ley Hipotecaria de Puerto Rico, es fácil descubrir el distinto juego prescriptivo a que se presta cada una de ellas. Algunas son acciones personales; otras son acciones reales; otras tienen su término prescriptivo expresamente fijado. Como la acción de indemnización de los daños es una consecuencia de la declaración de rescisión, resolución o revocación, la primera quedaría afectada por la virtualidad de las últimas, en cuanto a prescripción se refiere.

La determinación fundamental en estos casos, cuando la propiedad ha pasado a manos de un tercero, es: si se trata de una acción personal, en cuyo caso no hay retroacción; si por el contrario, se trata de una acción real, bien por tratarse de una condición inscrita en el Registro o por cualquiera disposición expresa de la ley a tal efecto, en cuyo caso los derechos revierten a su verdadero dueño.

El art. 169 de nuestro Reglamento Hipotecario, *in fine*, dispone que el ejecutante queda sujeto a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados (acreedores hipotecarios posteriores, subadquirentes, etc.)

"por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el Juez para autorizar el procedimiento y para continuarlo". Esta disposición no tiene otro efecto que equiparar la desventaja procesal, que en favor del ejecutante y en contra del ejecutado, produce inicialmente el procedimiento ejecutivo sumario. Obsérvese que la misma no dispone la nulidad del ejecutivo sumario, sino la mera compensación por la conducta dolosa o culpable del ejecutante.

Es conveniente señalar además que la acción por intereses cobrados en demasía, sería siempre una acción personal, una acción directa del ejecutado contra el ejecutante, no una acción sobre la cosa, y siendo esto así, no hay juego para el tercero hipotecario. En casos de nulidad de actuaciones, propiamente dichas, según veremos más adelante, se consagra el derecho del ejecutado a ir sobre la cosa, por la acción reivindicatoria, pero no en el caso de la indemnización provista para el caso de dolo o de culpa del ejecutante. La razón es muy sencilla: en el caso de dolo o culpa del ejecutante, la causa de nulidad no constaría del Registro mientras que en los casos de nulidad de actuaciones, la causa de nulidad sí constaría del Registro. Veamos cómo se desenvuelve este principio en nuestra jurisprudencia.

En el caso de *Pontón* v. *Sucesores de Huertas González*, 42 D.P.R. 529 (Del Toro), (1931), cita precisa a las págs. 532 y 539, la ejecutante alegaba que la acción apropiada era la reivindicatoria y no la de nulidad. El apelado por el contrario alegaba: "No es ni puede ser la presente una acción reivindicatoria. Es simplemente una acción para obtener daños y perjuicios basados en la nulidad de ciertas actuaciones; en la falsedad maliciosa de ciertas alegaciones en el escrito inicial y en la certeza y cuantía de la deuda reclamada, así como el vencimiento de la misma". (Arts. 169 y 175 del Reglamento para la ejecución de la Ley Hipotecaria) (pág. 532). En este caso se incluyeron como no pagados, intereses que habían sido satisfechos, y en virtud de ese hecho, se ale-

gaba el vencimiento de la deuda. (Pág. 535.) En cuanto a la reivindicación, este Tribunal hizo suyas las manifestaciones del alegato del apelado. En cuanto a la naturaleza de la acción, concluyó: "No importa que la demanda se titulara 'sobre *nulidad* de ejecutivo hipotecario, otros extremos y daños y perjuicios'. La acción que tiene el demandante es la que le reconoce el artículo 169 del reglamento de la Ley Hipotecaria que sujeta al ejecutante a indemnizar cuantos daños y perjuicios irrogue al deudor o a terceras personas, por malicia o negligencia en la fiel exposición de los hechos, y esos daños son los que determina el artículo 1270 del Código Civil [1255 ed. 1930, 31 L.P.R.A. 186, sec. 3514] o sea la restitución de la cosa objeto del contrato, con sus frutos, y el precio con sus intereses, u otros de naturaleza semejante." (Pág. 539.) (Énfasis provisto.)

Como se ve, en este caso la acción personal de daños se hace descansar en el art. 169 del Reglamento Hipotecario, aunque la medida de los mismos, se fija de acuerdo con el articulado correspondiente a la nulidad del Código Civil.

El caso de *Martorell* v. *Crédito y Ahorro Ponceño*, 42 D.P.R. 655 (Texidor), (1931) cita precisa a la pág. 661, este Tribunal dijo: "La duda podría surgir acerca de si el incumplimiento de algunas de esas condiciones o requisitos no originaría más que una responsabilidad por daños y perjuicios. Pero esta responsabilidad no puede tener otra base que la de que en el escrito se omitieron circunstancias o hechos indispensables para que el Juez autorizara el procedimiento y lo continuara. Cuando la ley requiere una forma especial y determinada de pedir ante un tribunal, la desviación de esa forma puede y debe, a nuestro juicio, originar la nulidad de todo procedimiento seguido sobre la base de esa incorrección." En este caso se incluyeron como no pagados parte del capital y los intereses que se habían satisfecho antes de la ejecución (pág. 657). A primera vista parece que estamos ante una acción por causa de nulidad absoluta o radical, que "es la que tiene lugar cuando se ha realizado un acto o negocio jurí-

dico con infracción de una norma legal prohibitiva," (Roca Sastre, obra citada, pág. 444), pero al devolverse el caso para ulteriores procedimientos en lo que toca a la reclamación de daños y perjuicios (pág. 663), nos damos cuenta que es otra manera de formular, a la inversa, la misma doctrina establecida en el caso de *Pontón*.

El caso de *Pontón* v. *Sucrs. de Huertas González* (en reconsideración) 46 D.P.R. 789, (Del Toro), (1934), cita precisa a la pág. 794, reafirma la doctrina sentada en la primera decisión en cuanto a la naturaleza de la acción, que continúa siendo una personal entre el ejecutado y el ejecutante. El caso de *Martorell* v. *Crédito y Ahorro Ponceño*, supra, se ha citado después, pero en un aspecto distinto, o sea, que otras cantidades que no sean las específicamente incluídas en la cláusula de garantía hipotecaria, no pueden incluirse en la deuda hipotecaria, como en dicho caso, resultaba ser el pago de primas de pólizas de seguro (pág. 662).

El caso es bastante sencillo y no hay que complicarlo indebidamente: la declaración de nulidad en el recobro de daños por dolo o culpa lata que dispone el art. 169, de nuestro Reglamento Hipotecario es igual a la declaración de negligencia en el recobro de daños que dispone el art. 1802 del Código Civil de Puerto Rico, aunque su juego prescriptivo sea distinto, según veremos más adelante.

Sin embargo, cuando el ejecutado quiere dirigir su acción sobre la cosa, *rei-vindicatio* por cualesquiera nulidades de actuaciones, si hemos de atender a lo dispuesto por el art. 175 de nuestro Reglamento Hipotecario, el artículo de nuestra Ley Hipotecaria que entra en juego es el art. 34, que nos manda respetar cualquier derecho de tercero, si la causa de nulidad no consta del Registro de la Propiedad. Si la causa de nulidad consta del Registro, el ejecutado tiene una acción directa contra el ejecutante, o el posterior adquirente (tercero). Así resulta cuando el procedimiento ejecutivo se ha radicado ante un tribunal sin competencia, (supuesto del art. 170 de nuestro Reglamento) o se ha dejado de requerir a las personas seña-

ladas por el art. 171 de nuestro Reglamento: *Sucn. Trías* v. *P. R. Leaf*, 50 D.P.R. 91, (Hutchison), (1936), cita precisa a la pág. 96; *Ayala* v. *Flores*, 50 D.P.R. 873 (Travieso), (1937), cita precisa a la pág. 880; *Crespo* v. *Schlüter*, 58 D.P.R. 834, (Del Toro), (1941), cita precisa a las págs. 839–840. Ahora bien, sin determinar precisamente si se trata de una acción comprendida en los arts. 34 ó 38 de la Ley Hipotecaria de Puerto Rico o en el art. 169 de su Reglamento, o si se trata de una acción de nulidad absoluta, nulidad de acuerdo con el estatuto de usura, simple anulabilidad, o de dolo o culpa lata, este Tribunal ha anulado numerosos procedimientos ejecutivos hipotecarios, porque se reclamaron en ellos, "cantidades que no estaban hipotecariamente garantizadas". Veamos cómo se desarrolla esta curiosa particularidad en nuestra jurisprudencia:

En el caso de *Santos* v. *Crédito y Ahorro Ponceño*, 41 D.P.R. 946 (Hutchison), (1931), se anuló un procedimiento ejecutivo hipotecario, porque en una hipoteca constituída para garantizar el capital exclusivamente, el ejecutante incluyó también, intereses al seis por ciento anual, desde la fecha del vencimiento de la hipoteca hasta el 31 de diciembre de 1927, los gastos de otorgamiento de la escritura y su inscripción en el Registro de la Propiedad. El Tribunal se planteó el problema de la siguiente manera: "La cuestión a ventilar es si las cantidades que se pretende recobrar en concepto de intereses y gastos incidentales al otorgamiento e inscripción del instrumento *estaban garantizadas por la hipoteca.*" (Pág. 948.) Este Tribunal concluyó que: "ni el interés de la deuda para con el banco, ni el dinero satisfecho por él al notario y al registrador de la propiedad, fueron incluídos en la hipoteca. El procedimiento ejecutivo fue nulo". (Pág. 949.) (Énfasis provisto.)

En el caso de *Martorell* v. *Crédito y Ahorro Ponceño*, 42 D.P.R. 655 (Texidor), (1931), se anuló un procedimiento ejecutivo hipotecario porque en una hipoteca constituída para garantizar el pago de capital e intereses exclusivamente, el

ejecutante incluyó también, ciertas "cantidades pagadas por el Crédito y Ahorro Ponceño, por cuenta de Martorell y por razón de seguros" (pág. 662). Este Tribunal, citando el caso de *Santos* v. *Crédito y Ahorro Ponceño*, supra, concluyó que: "Las cantidades que pudiera adeudar *Martorell al Crédito y Ahorro Ponceño* por concepto de pago de primas de pólizas de seguro, no pudieron nunca incluirse en la deuda hipotecaria, a los fines de la ejecución de ese crédito, *porque no estaban aseguradas con la hipoteca*" (pág. 662), (énfasis provisto).

En el caso de *Vázquez viuda de McCormick* v. *Gutiérrez*, 52 D.P.R. 170 (Hutchison), (1937), se anuló una resolución sobre una excepción previa de falta de hechos en una demanda de nulidad de procedimiento ejecutivo hipotecario, porque una hipoteca constituída para garantizar el pago de capital e intereses, el ejecutante incluyó una partida de intereses que no estaba cubierta por la hipoteca. Este Tribunal, citando los casos de *Santos* v. *Crédito y Ahorro Ponceño*, supra, y *Martorell* v. *Crédito y Ahorro Ponceño*, supra, concluyó: "De la demanda presentada en este caso aparece que la hipoteca se constituyó por el término de once meses trece días para garantizar el pago de $1,041 como principal y 'los intereses por el término del contrato' a razón de 12 por ciento anual, pagaderos por mensualidades. Se desprende además que después de radicada la petición enmendada en el procedimiento ejecutivo la corte de distrito ordenó se expidiera un requerimiento para el pago (*a*) de mil dólares como saldo adeudado del principal por haber abonado la deudora a cuenta del mismo la cantidad de $41 y (*b*) de diez dólares para intereses adeudados y vencidos correspondientes a la última mensualidad de octubre de 1932, por haber abonado la deudora $120 de intereses por el año de la constitución de la hipoteca y $960 de intereses de mora por convenio de las partes. Evidentemente los $10 de intereses correspondientes a octubre de 1932, no estaban cubiertos por la hipoteca, y debido a haberse incluído esa partida en la orden decretando la expedición del

requerimiento de pago, el procedimiento ejecutivo era una nulidad. *Santos* v. *Crédito y Ahorro Ponceño*, 41 D.P.R. 946; *Martorell* v. *Crédito y Ahorro Ponceño*, 42 D.P.R. 655." (Págs. 179 y 180), (énfasis provisto.)

En riguroso análisis, ni el caso de *Santos* v. *Crédito y Ahorro Ponceño* (hipoteca sin que se pactaran intereses de clase alguna) ni el caso de *Martorell* v. *Crédito y Ahorro Ponceño* (recobro dentro de un ejecutivo hipotecario del pago de primas de póliza) eran aplicables. Es más, en cuanto a intereses se refiere, el caso de *Santos* está implícitamente revocado por nuestra posterior jurisprudencia que admite el recobro de intereses de mora al tipo legal, después del vencimiento, cuando no se ha pactado otro tipo de interés: *Figueroa* v. *Boneta*, 58 D.P.R. 811 (Del Toro), (1941), cita precisa a la pág. 817.

En este último caso, se anuló un ejecutivo hipotecario porque en una hipoteca constituída para garantizar "la suma de dos mil quinientos dólares que se compromete [el deudor] a devolver en el término de un año a contar desde hoy, con intereses a razón del doce por ciento anual" (pág. 815), el ejecutante incluyó intereses al mismo tipo pactado después de vencido el término. Este Tribunal, citando los casos de *Vázquez viuda de McCormick* v. *Gutiérrez*, supra, *Santos* v. *Crédito y Ahorro Ponceño*, supra, y *Martorell* v. *Crédito y Ahorro Ponceño*, supra, concluyó: "Y en cuanto a que aunque no se pactaran expresamente, podrían siempre cobrarse los intereses de mora de acuerdo con los artículos 1053, 1054 y 1061 del Código Civil, ed. 1930, la cuestión no es nueva. En el caso de *Caraballo* v. *Registrador*, 48 D.P.R. 923, 925, ratificando y aplicando la doctrina del caso de *Goico* v. *Rodríguez et al.*, 28 D.P.R. 530, dijo esta corte: 'El contrato original no contenía disposición alguna respecto al tipo de interés en caso de que no se efectuara el pago a su vencimiento. En ausencia de tal disposición los acreedores hipotecarios si hubiesen instado acción sobre el contrato original, hubieran podido recobrar intereses a razón de 6 por ciento anual sola-

mente a partir de la fecha del vencimiento y de la falta de pago . . .' Pero como los que se cobraron no fueron los intereses legales, siempre resulta que el ejecutante se extralimitó y su extralimitación, convierte en nulo todo lo que se actuara a su instancia." (Pág. 817.)

En el caso de *De Jesús* v. *Assad,* 63 D.P.R. 137 (Todd, hijo), (1944), se anuló un procedimiento ejecutivo hipotecario porque en una hipoteca constituída para garantizar el pago de capital únicamente, de acuerdo con la cláusula en la cual se constituía la hipoteca, el ejecutante incluyó intereses al doce por ciento mensual después del vencimiento, de acuerdo con la cláusula en la cual se describía el préstamo realizado. Este Tribunal, citando los casos de *Santos* v. *Crédito y Ahorro Ponceño, Martorell* v. *Crédito y Ahorro Ponceño, Vázquez Vda. de McCormick* v. *Gutiérrez* y *Figueroa* v. *Boneta,* concluyó que: "Una mera lectura de la cláusula tercera, supra, demuestra que no se hizo extensivo el gravamen hipotecario como garantía de los intereses de mora que se habían convenido en la cláusula primera y siendo esto así, no erró la corte sentenciadora al declarar nulo el procedimiento ejecutivo." (Pág. 139.)

En el caso de *F. Rodríguez Hnos. & Co.* v. *Aboy,* 66 D.P.R. 525 (Travieso), (1946), se anuló un ejecutivo hipotecario, porque en una hipoteca constituída para garantizar el pago de capital e intereses al nueve por ciento anual de cierto plazo que vencía el 18 de diciembre de 1929, la ejecutante incluyó en la ejecución intereses al diez por ciento anual, de acuerdo con un contrato privado de prórroga del plazo y aumento de interés, que independientemente de lo acordado en la escritura de hipoteca, habían convenido las partes. (Págs. 528–529.) Este Tribunal, citando los casos de *Santos* v. *Crédito,* supra, *Martorell* v. *Crédito y Ahorro Ponceño,* supra, *Vázquez Vda. de McCormick* v. *Gutiérrez,* supra, *Figueroa* v. *Boneta,* supra y *Torres* v. *Fernández,* 65 D.P.R. 622, concluyó que: "Ha sido doctrina constante de este Tribunal la de que en el procedimiento ejecutivo sumario cualquier cantidad que se cobre

sin haber sido hipotecariamente garantizada vicia de nulidad el procedimiento . . . . No podemos perder de vista que el procedimiento ejecutivo sumario es prácticamente uno *ex-parte* por cuya razón al hacerse uso de él todos los requisitos y condiciones precedentes y concomitantes a su ejercicio deben ser observados estricta y rigurosamente . . . Especialmente si consideramos que la orden de requerimiento de pago equivale a una sentencia exigiendo el pago de la misma dentro del término de treinta días sin la celebración de juicio . . . Por los motivos que dejamos expresados, entendemos que la violación de los preceptos legales que regulan el referido procedimiento constituyen un error fundamental que afecta los derechos de la deudora, ya que en virtud del procedimiento sumario se cobraron intereses que no están hipotecariamente garantizados." (Págs. 543–544.)

En el caso de *Buil* v. *Banco Popular*, 69 D.P.R. 254 (Marrero), (1948) se anuló un procedimiento ejecutivo hipotecario porque en una hipoteca constituída para garantizar un pagaré comercial por $4,000, a seis meses plazo, con intereses al 12% anual prorrogable a voluntad del tenedor, cuyas prórrogas debían anotarse en el mismo documento, lo cual bastaría para su validez (pág. 256), el banco ejecutante incluyó en la ejecución intereses a razón del 12 por ciento anual·por el término de las prórrogas concedidas a la deudora. (Pág. 257.) Este Tribunal, citando los casos de *Torres* v. *Fernández*, supra, *Vázquez Vda. de McCormick* v. *Gutiérrez* y *Martorell* v. *Crédito y Ahorro*, concluyó: "Cuando en un procedimiento ejecutivo sumario se cobran cantidades en exceso de las debidas, el procedimiento resulta nulo de toda nulidad . . . [pág. 264]. En el escrito inicial, conforme ya hemos visto, se hace constar de manera paladina que 'como existen terceros, de acuerdo con la ley, sólo son exigibles en estos procedimientos, los intereses vencidos y correspondientes a las dos últimas anualidades y la corriente, que se computarán desde el 25 de mayo de 1931 a 25 de febrero de 1934, ascendentes a la suma de $1,320.' A este respecto, el aquí

demandado hizo en su petición inicial una fiel exposición de la ley, pero calculó los intereses por todo ese tiempo al tipo del 12 por ciento anual . . . En el pagaré otorgado por Cortijo a favor del Banco, que aparece al principio de esta opinión, se expresa claramente que 'esta obligación devenga intereses al 12 por ciento anual' y que 'toda prórroga que para su pago se conceda (sic) voluntariamente su tenedor, se anotará en este mismo documento, lo que bastará para su validez.' A juzgar por la prueba aducida, especialmente por la certificación suscrita por el Registrador de la Propiedad de San Juan en 27 de diciembre de 1944, no se concedió prórroga alguna para el pago de la obligación. La Ley de Usura núm. 5 de 17 de agosto de 1933, Sesión Extraordinaria (pág. 27) no desempeña, en este caso, por ende, papel de clase alguna . . . No obstante, el documento reseñado demuestra con toda claridad que si bien en él se estipularon intereses al 12 por ciento por el término de su vigencia, nada se dijo en relación con los de mora, y es doctrina establecida desde largo tiempo ha que cuando en un documento de esta naturaleza no se estipulan intereses de mora solamente podrán cobrarse los legales al tipo de 6 por ciento." (Pág. 265.)

En el caso de *Piovanetti* v. *Vivaldi*, 80 D.P.R. 108, (Saldaña), (1957), se anuló un procedimiento ejecutivo sumario porque en una hipoteca constituída para garantizar el pago de capital e intereses al 12 por ciento anual, el ejecutante incluyó en su ejecución intereses al mismo tipo pactado después del vencimiento de la obligación, "sin que hubiera pacto alguno relativo a intereses después del vencimiento del débito." (Pag. 113.) Este Tribunal, citando los casos de *Buil* v. *Banco Popular*, supra, *Torres* v. *Fernández*, supra, *Figueroa* v. *Boneta*, supra y *Vázquez Vda. de McCormick* v. *Gutiérrez*, supra, concluyó: "En definitiva, pues, el acreedor hipotecario, (aquí demandado apelado) reclamó en el ejecutivo sumario intereses al 12 por ciento anual después del vencimiento total de la deuda, cuando en realidad sólo podían recobrarse intereses de mora al tipo de 6 por ciento. Fuera

de duda, dicha actuación vicia de nulidad el procedimiento hipotecario. En primer lugar, es preciso ajustarse de modo riguroso a los trámites y requisitos del procedimiento sumarísimo, incurriéndose en nulidad de lo actuado al apartarse de los mismos. En segundo lugar, la reclamación de intereses excesivos que no están hipotecariamente garantizados, constituye un error sustancial en perjuicio de los derechos del deudor, y consecuentemente, invalida el procedimiento ejecutivo seguido." (Pág. 119.)

Es curioso observar que en ninguno de estos casos se hace referencia al art. 175 de nuestro Reglamento Hipotecario, ni se dice cuáles son los requisitos mínimos del cumplimiento estricto, en cuanto a intereses se refiere; ni se hace referencia al hecho que el juez, con vista al escrito inicial y a los documentos que lo acompañaban, podría determinar el verdadero alcance de la garantía hipotecaria por intereses.

El art. 175 autoriza distintas reclamaciones contra el ejecutante por el ejecutado, por la inhabilidad inicial de éste para oponerse al trámite sumario. Las acciones que autoriza el art. 175 son a manera de una continuación del procedimiento ejecutivo sumario, pero esta vez de carácter plenario o declarativo, porque el primero no constituye cosa juzgada: *Lamb & Co.* v. *Fantauzzi Hermanos*, 17 D.P.R. 307, (Aldrey), (1911) cita precisa a las págs. 311–312. Las acciones son las siguientes: (1)—nulidad de título—*Sucesión Suro* v. *Sucesión Padró et al*, 21 D.P.R. 241, (Hernández), (1914), cita precisa a la pág. 247 y *Gaztambide* v. *Sucn. Ortiz*, 70 D.P.R. 412 (De Jesús), (1949), cita precisa a la pág. 423; (2)—nulidad de actuaciones—*The American Trading Co.* v. *Monserrat*, 19 D.P.R. 992, (Del Toro), cita precisa a las págs. 994–995 y *Santana* v. *Orcasitas*, 47 D.P.R. 735, (Del Toro), (1934), cita precisa a las págs. 744 y los casos *Trías* v. *P. R. Leaf*, *Ayala* v. *Flores*, *Crespo* v. *Schlüter* antes citados; (3)—nulidad por no haber vencido la deuda—*Pontón* v. *Sucesores de Huertas González*, supra; (4)—nulidad por no constar la certeza de la reclamación—*Martorell* v. *Crédito y Ahorro*

*Ponceño*, supra; (5)—nulidad por extinción o cuantía—*Polanco* v. *Goffinet et al.*, 29 D.P.R. 120 (Hutchison), (1921), cita precisa a la pág. 140.

El llamado "cumplimiento estricto", en cuanto a intereses se refiere, son las dos únicas exigencias que contiene el art. 169 de nuestro Reglamento: (1)—señalar categóricamente las cantidades ciertas *cobradas* en concepto de intereses, y (2)—expresar la cuantía *líquida* de la reclamación. Si se examina el bloque de casos en el cual se han anulado procedimientos ejecutivos hipotecarios, por haberse cobrado en ellos "intereses no hipotecariamente garantizados", con excepción de los casos de *Pontón* y *Martorell,* se verá que en todos ellos se señalaron categóricamente las cantidades ciertas *cobradas* por intereses antes de la ejecución y se expresó la cuantía líquida de los mismos. No hubo, por lo tanto, fraude ni abuso intencional.

Sin embargo, aunque sin determinarlo específicamente, la fuente de autoridad para anularlos ha sido el art. 169, que no persigue otro propósito que proteger al juez sobre lo que no puede constar de los documentos a él presentados. Todos versan sobre la interpretación judicial de la extensión de la garantía hipotecaria por intereses. El resultado práctico ha sido que le hemos exigido a los ejecutantes garantizar los errores judiciales que se hayan podido cometer en la expedición de los autos de requerimiento, haciendo a los ejecutantes responsables de ciertos daños que sólo están provistos para el caso de fraude.

Es indudable, pues, que las acciones de nulidad por el cobro de intereses en demasía en un procedimiento ejecutivo hipotecario no están comprendidas en el art. 34 ni en el art. 38 de nuestra Ley Hipotecaria. Si se trata de un caso de fraude, se aplica el art. 169 del Reglamento y si se trata de un caso de usura, se aplica la ley especial de usura.

Como quiera que se mire esta cuestión, resalta a la vista el hecho que el ejecutado, sólo tiene contra su ejecutante, dos acciones claras y específicas: (1) una acción real sobre la

cosa, que se da: (*a*) cuando la cosa no ha pasado a manos de un tercer poseedor, subadquirente o tercero de buena fe o (*b*) cuando, a pesar de haber pasado la cosa a manos de otra persona que no es el ejecutante, hay constancia en el Registro de la causa de nulidad y (2) una personal, contra el ejecutante, cuando la cosa ha pasado a manos de un tercer poseedor y no hay constancia en el Registro de la causa de nulidad.

La acción real es la acción reivindicatoria, acción principal que no necesita de ninguna anterior declaración de nulidad: *Oliver* v. *Oliver*, 23 D.P.R. 181 (Hutchison), (1915), cita precisa a las págs. 182, 194–195, 201, 203 y 205. En este caso, el título anterior inscrito del ejecutado se puede enfrentar victoriosamente al hecho posesorio imperfecto del ejecutante (Morell) o a la inexactitud registral (Roca Sastre), puesto que el márshal que otorga la escritura de venta judicial no es "una persona que en el Registro aparezca con derecho o poder alguno para transferir la finca hipotecada": *Sucn. Trías* v. *Porto Rico Leaf*, 50 D.P.R. 91, cita precisa a la pág. 96, no habiendo tampoco tercero embebido, ya que "uno que adquiera una propiedad del comprador o adjudicatario en subasta en procedimiento ejecutivo hipotecario con conocimiento de las constancias del registro de la propiedad, y a sabiendas de que la validez de su título depende de la del procedimiento mencionado, no es un tercero": *Ayala* v. *Flores*, 50 D.P.R. 873, cita precisa a la pág. 880.

La acción personal en caso de fraude, es una acción principal de daños que no necesita de ninguna anterior declaración de nulidad: *Pontón* v. *Sucesores de Huertas González*, 42 D.P.R. 526, cita precisa a la pág. 539; en caso de usura, es una acción principal de recobro y confiscación, que no necesita de ninguna anterior declaración de nulidad, por ser una acción estatutaria, independiente, determinada en todos sus extremos por nuestra Ley sobre Fijación de Interés en Toda Clase de Obligaciones de 1902, según enmendada; aún en el caso de la acción de nulidad por cobro de "intereses no hipotecariamente garantizados", se trata de una acción principal

de daños, que no necesita de ninguna anterior declaración de nulidad, por ser parecida a la que rige en caso de fraude. Basta dejar consignado para ocasión más oportuna, que en el caso de haberse incluído "intereses no hipotecariamente garantizados", no se trata de una acción de daños, como hasta ahora hemos creído, aplicándole la disposición referente al fraude, sino una acción en cobro de dinero (juicio declarativo de menor o mayor cuantía).

En cuanto a esta última clase de acción de nulidad, la de "los intereses no hipotecariamente garantizados", supongo que algún día tendremos que pasar sobre si, el hecho de haber constancia en el Registro de la posible causa de nulidad,—supuesto que no se da en el fraude—, esta acción personal se convierte en una acción real, por no existir posibilidad de tercero embebido, en cuyo supuesto tendremos que aplicarle el mismo criterio que hemos aplicado en los casos de nulidad de actuaciones, para los cuales hemos aceptado la acción directa sobre la cosa. Será ese el momento oportuno de determinar, si la acción personal en cobro de dinero o la acción real es una simple elección de remedios, mejor que una exclusión de remedios.

Con relación al término prescriptivo, no es posible confundir el término de la acción de despojo por fraude o culpa lata que establece el art. 169 de nuestro Reglamento Hipotecario, con la acción u omisión que causa daño a otro, interviniendo culpa o negligencia del art. 1802 de nuestro Código Civil. La diferencia entre ambos es evidente: en la primera se trata de la infracción de un deber de decir verdad, de carácter privado; en la segunda se trata de la infracción, de un deber tutelar de proteger a la comunidad de cualquiera actuación antijurídica, de carácter público. Es correcta nuestra jurisprudencia que fija en quince años el término prescriptivo de las acciones de despojo por fraude, o por cobro en demasía, mientras el mismo siga siendo considerado como algo equivalente al fraude, por no tener un período prescriptivo fijo, menos cuando se trate de contratos usurarios, en cuyo caso el

término prescriptivo para solicitar el exceso de lo pagado por concepto de intereses y la confiscación de la parte de capital correspondiente, sería de un año. Casualmente el indicio más claro que poseemos sobre la individualización, como materia de daños, de la acción dispuesta por el art. 169, *in fine*, es este término prescriptivo de quince años. Si hubiéramos entendido que la acción de nulidad precede a la de daños, el término prescriptivo hubiera tenido que ser de cuatro años. Pero siempre que hemos considerado que la acción de daños es subsidiaria a la de nulidad, no lo hemos hecho pensando en que la segunda no procede si no se ejercita la primera, sino más bien, de acuerdo con su distinto funcionamiento frente a tercero, caso que como hemos visto, no se da en el art. 169 de nuestro Reglamento.

Ahora bien, enfrentándonos con los méritos de la presente acción: ¿Es necesario esperar a que el procedimiento ejecutivo termine para proceder al juicio plenario? ¿Desde cuándo empieza a correr el término prescriptivo?

El art. 175 de nuestro Reglamento Hipotecario, que es la disposición legal especial que autoriza las acciones que versaren sobre nulidad de título o de las actuaciones, o sobre vencimiento, certeza, extinción o *cuantía* de la deuda, referente a procedimientos ejecutivos hipotecarios, las cuales se ventilarán en el juicio plenario que corresponda, permite que al interponerse la demanda o durante el curso del pleito plenario, "podrá solicitarse que se asegure la efectividad de la sentencia, con retención del todo o una parte de la cantidad que por el procedimiento ejecutivo deba entregarse al ejecutante", o sea, que no es necesario esperar que termine el procedimiento ejecutivo sumario, para que empiece la acción plenaria. Oigamos sobre esto a Morell:

"Este juicio declarativo es, desde luego, independiente del procedimiento sumario, y, por tanto, ha de tramitarse con separación en el juzgado que proceda según las reglas ordinarias de competencia; pero no es preciso que sea subsiguiente al procedimiento sumario, en el sentido de haber de esperarse

a que éste termine. El juicio ordinario puede ser incoado casi inmediatamente después de empezado el procedimiento sumario y hasta puede terminar antes que éste." 4 Morell, Legislación Hipotecaria 149–150 (segunda ed. de la Editorial Reus de 1930).

Por su parte, Roca Sastre, refiriéndose al art. 132 de la Ley española equivalente al art. 175 de nuestro Reglamento Hipotecario, dice: "El artículo 132 dispone . . . que todas las 'reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versen sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilaran en el juicio declarativo que corresponda, sin producir nunca el efecto de *suspender* ni *entorpecer* el procedimiento.'

"Conocerá de este juicio declarativo el Juzgado que le corresponda según las Reglas ordinarias de competencia judicial; no deberá, pues, seguirse necesariamente en el mismo Juzgado en que se ventile o se haya ventilado el procedimiento judicial sumario.

"*Para promover este juicio declarativo no hay que esperar a que termine el procedimiento judicial sumario, pues puede interponerse también durante el curso de éste.* [Énfasis en cuanto a este párrafo, provisto.]

"Al entablar este juicio declarativo o durante su substanciación, el actor podrá decir, al Juez que conozca del mismo, que se asegure la efectividad de la sentencia que en él recaiga, mediante ordenar la *retención* del todo o parte de la cantidad que como resultado del procedimiento judicial sumario deba entregarse al acreedor que lo haya promovido.

"Como el procedimiento judicial sumario puede terminar adjudicando la finca al acreedor, entonces no es posible ordenar la retención de dicha cantidad, puesto que el acreedor adjudicatario no debe percibir cantidad alguna, ya que cobra con la finca. Morell entiende que en este caso debe ordenarse al acreedor que consigne, pero creemos con Vallés y Pujals que lo procedente en este supuesto sería obtener una anotación

preventiva que indicara que la finca adjudicada al acreedor queda afecta a las resultas del juicio declarativo entablado." IV Roca Sastre, Derecho Hipotecario 882–883, (quinta ed. de la Editorial Reus de 1954).

En cuanto a una acción de daños que se base en un fraude, o en una pretensión de demasía, menos razón ha de haber en esperar a que termine el procedimiento ejecutivo hipotecario. La infracción se comete tan pronto se le notifica al deudor hipotecario el auto de requerimiento. Ese es el momento desde el cual podría ejercitarse por el ejecutado la acción plenaria, que como ya hemos visto, es independiente de la sumaria. Desde ese momento podría el ejecutado ejercitar la acción reivindicatoria, o la acción de nulidad de actuaciones, o la acción de daños por fraude, o de las acciones correspondientes al vencimiento, certeza o extinción o cuantía, por la misma razón que tendría derecho a solicitar dentro del mismo procedimiento sumario, la suspensión de dicho procedimiento si justifica documentalmente la existencia de un procedimiento criminal por falsedad del título hipotecario, o interpusiere una tercería de dominio acompañado del título de propiedad inscrito a favor del tercerista, o radicare constancia de la cancelación de la hipoteca que se pretende ejecutar o en caso de garantías hipotecarias por cuentas corrientes, estableciere la diferencia entre los saldos. Como la prescripción de acciones es siempre una cuestión civil, veamos lo que sobre el particular, establece nuestro propio Código.

El Código Civil de Puerto Rico en su art. 1869 (ed. 1930—31 L.P.R.A. 653, sec. 5299), equivalente al art. 1969 del Código Civil español, dispone:

"El tiempo para la prescripción de toda clase de acciones, *cuando no haya disposición especial que otra cosa determine,* se contará desde el día en que pudieran ejercitarse." (Énfasis provisto.)

Manresa en sus Comentarios al Código Civil Español XII Manresa 945, (quinta ed. del Instituto Editorial Reus

del 1951), con relación al art. 1969 del Código Civil español, dice:

"Conforme con esta doctrina se estableció en dicha sentencia, como regla de jurisprudencia, que *'desde el instante en que se realiza un acto* o se celebra un contrato cualquiera que lesiona derechos de alguien que pueden ser inmediatamente reivindicables, nace la acción correspondiente para conseguirlo, *y que a este momento hay que atenerse para empezar a contar en su caso el término de la prescripción,* cuando la Ley especialmente no dispone otra cosa'; regla que si bien fue consignada con relación a la acción rescisoria, es aplicable a los demás casos que puedan ocurrir." (Énfasis provisto.)

La sentencia del Tribunal Supremo de España de 8 de mayo de 1903, 95 Jur. Civ., pág. 733, cita precisa 743, interpretando el art. 1969 (1869 nuestro) expresa:

"Considerando que dado el concepto y fundamento de la prescripción encaminada principalmente a dar fijeza y certidumbre a la propiedad y a toda clase de derechos emanados de las relaciones sociales y de las condiciones en que se desarrolla la vida, aun cuando éstas no se ajusten siempre a principios de estricta justicia, que hay que subordinar, como mal menor, al que resultaría de una inestabilidad indefinida, es evidente que por el transcurso de determinado tiempo se entienden borrados los efectos que en los títulos respectivos de aquéllos puedan existir, y que al efecto es preciso señalar por regla general un término fijo y claro desde el que empiece a contarse dicho término, cual es el que se consigna en el artículo 1969 del Código:

*"Considerando que es indudable que desde el instante en que se realiza un acto* o se celebra un contrato cualquiera que lesiona derechos de alguien que pueden ser inmediatamente reivindicados, *nace la acción correspondiente para conseguirlo, y que a este momento hay que atenerse para empezar a contar en su caso el término de la prescripción,* cuando la ley especialmente no dispone otra cosa, pues la frase empleada por el legislador en el expresado artículo 1969 de que el tiempo para la *prescripción se contará desde el día en que las acciones pudieron ejercitarse, hace referencia notoria a la posibilidad legal,* por lo que sólo deben ser tenidas en cuenta las condiciones del individuo u otras circunstancias cuando la ley así lo determine y prefije como excepción,

lo cual está conforme con el alcance y fines de la prescripción."
(Énfasis provisto.)

En resumen, cuando se trata de acciones sobre nulidad de título o actuaciones, o acciones que atañen al vencimiento, certeza, extinción o *cuantía* de la deuda hipotecaria, objeto del procedimiento ejecutivo sumario, o acciones para recobrar el exceso producido por la naturaleza usuraria de la deuda con la confiscación correspondiente, o acciones para recobrar lo pagado en demasía por intereses, el art. 38 de la Ley Hipotecaria no es aplicable haya o no tercero. Tal vez sería aplicable el art. 33, en aquellos casos en que la posible causa de nulidad no conste del Registro, en ausencia de alguna disposición expresa en contrario, de acuerdo con el art. 175 de nuestro Reglamento Hipotecario.

En acciones para anular un procedimiento ejecutivo hipotecario por cobro de intereses en demasía el artículo aplicable es el art. 169, si media dolo o culpa lata en la fiel exposición de los hechos y circunstancias que ha de apreciar el juez al momento de autorizar el auto de requerimiento. Si no media dolo o culpa lata, la acción es de recobro de lo pagado en exceso, es una acción ordinaria en cobro de dinero. Si media usura, la acción es la que provee nuestra Ley sobre Fijación de Interés en Toda Clase de Obligaciones de 1902.

El ejecutado tiene contra el ejecutante dos acciones claras y precisas: la reivindicatoria cuando la propiedad no haya pasado a manos de un tercero, o cuando habiendo pasado, la causa de nulidad conste en el Registro de la Propiedad, y la personal de daños cuando la propiedad ha pasado a manos de un tercero, sin que conste en el Registro la causa de nulidad, como es el caso de fraude por cantidades ciertas *cobradas* antes de la ejecución, pero dentro de los límites de lo pactado. Dichas acciones, la reivindicatoria y la de daños, no son acciones subsidiarias a ninguna declaración de nulidad, sino acciones principales, y por lo tanto, en cuanto a prescripción se refiere, se extingue la primera a los treinta años y la segunda a los quince años.

Asumiendo, aunque sin resolverlo, que la acción que aquí se ejercita, es análoga a la acción de despojo por fraude, regida por el art. 169 de nuestro Reglamento Hipotecario, la misma estaba prescrita al iniciarse.